# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br><br>SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL,<br><br>and<br><br>SAVANNAH RIVER MARITIME COMMISSION,<br><br>               Plaintiffs,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS;<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, SAVANNAH DISTRICT;<br><br>RYAN MCCARTHY, In his official capacity as Secretary of the Army;<br><br>LT. GENERAL TODD T. SEMONITE, In his official capacity as Commanding General and Chief of Engineers, U.S. Army Corps Of Engineers;<br><br>MAJOR GENERAL DIANA M. HOLLAND, In her official capacity as Commanding General, South Atlantic Division, U.S. Army Corps of Engineers;<br><br>and<br><br>COLONEL DANIEL H. HIBNER, In his official capacity as District Engineer, U.S. Army Corps of Engineers, Savannah District,<br><br>               Defendants. | C/A NO.:  1:19-cv-3132-RMG<br><br>**GEORGIA PORTS AUTHORITY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE** |

4

The Georgia Ports Authority ("GPA") by and through its undersigned counsel and pursuant to Local Civil Rules 7.04 and 7.05, submits this Memorandum of Law in Support of its Motion to Intervene. Because GPA's motion is timely, it has an interest in the subject matter at issue, denial of the motion would impair GPA's ability to protect its interests, and GPA's interests would not be adequately represented by current litigants, GPA is entitled to intervention of right under Rule 24(a). Alternatively, the Court should allow GPA to intervene pursuant to Rule 24(b) because it has an interest that legally and factually overlaps with the claims asserted in this action. GPA's proposed Answer is attached as Exhibit A.

## BACKGROUND

The Savannah Harbor Expansion Project (the "SHEP") is the Congressionally-authorized U.S. Army Corps of Engineers' project to deepen the federal navigation channel of the Savannah River from a depth of 42 feet to a depth of 47 feet.[1]

In connection with the SHEP, the National Oceanic and Atmospheric Administration's National Marine Fisheries Service issued a Biological Opinion on November 4, 2011, which concluded that the SHEP would require certain mitigation measures to reduce environmental impacts to shortnose and Atlantic sturgeon. Dkt. No. 1, ¶ 68. The Biological Opinion recommended construction of a fish passage around the New Savannah Bluff Lock and Dam ("NSBLD"). Dkt. No. 1, ¶ 71. The Biological Opinion was incorporated in the Corps' Final Environmental Impact Statement and Final General Reevaluation Report ("FEIS") for the SHEP. Dkt. No. 1, ¶¶ 74-75.

Opponents of the SHEP challenged the project in various fora, including in *Savannah Riverkeeper v. United States Army Corps of Engineers,* No. 9:12-610-RMG (D.S.C.). *Id.*, ¶¶ 81-82.

---

[1] Public Law 106-53 § 101(b) (9).

The parties to the case executed a Settlement Agreement of all claims. *See* Dkt. No. 1, Ex. G. As part of the Settlement Agreement, the South Carolina Department of Health and Environmental Control issued a 401 Certification, and the Savannah River Maritime Commission issued a Navigable Waters Permit for the SHEP (collectively, the "SC Approvals"). The Settlement Agreement provides that "[t]he Corps will comply with the terms and conditions of the Final Biological Opinion issued by the National Marine Fisheries Service on or about November 4, 2011." Dkt. No. 1, Ex. G, § I.A.13.

The Settlement Agreement states that "[t]he Corps will comply with the Monitoring and Adaptive Management Plan provided as Appendix D of the Final EIS." Dkt. No. 1, Ex. G, § I.A.15. Further, the 401 Certification states that "[t]he Monitoring and Adaptive Management Plan will ensure the accuracy of the predicted environmental impacts, assess the effectiveness of the mitigation features and provide for modification of the Project as needed." Dkt. No. 1, Ex. G, Ex. A, § 7. The Navigable Waters Permit requires that the Corps "comply with the Monitoring and Adaptive Management Plan provided as Appendix D of the Final EIS." Dkt. No. 1, Ex. G, Ex. B, § 17. For purposes of the SHEP, "adaptive management is defined as evaluating the accuracy of the predicted environmental impacts, assessing the effectiveness of the mitigation features, and modifying the project as needed to ensure the levels of environmental effects predicted in the Environmental Impact Statement (EIS) are not exceeded." FEIS, Appendix D, Monitoring and Adaptive Management Plan, p. 1.

On or about December 16, 2016, Congress enacted the Water Infrastructure Improvements for the Nation Act ("WIIN Act"), Public Law 114-322. Dkt. No. 1, ¶ 92. Section 1319(b)(1) of the WIIN Act deauthorized the NSBLD as a federal project. Dkt. No. 1, ¶ 92. The WIIN Act required the Corps to develop a revised fish passage at the NSBLD. Dkt. No. 1, ¶ 126.

The Biological Opinion has been amended since the issuance of the SC Approvals. The Biological Opinion for the SHEP was amended on or about September 23, 2013. Dkt. No. 1, ¶ 87. The Biological Opinion was amended a second time on or about October 13, 2017 (the "Second

6

Amendment"). Dkt. No. 1, ¶ 99. The Second Amendment recognized that the WIIN Act would delay the development of a revised fish passage eight months beyond the completion of the inner harbor dredging phase of the SHEP. Dkt. No. 1, ¶ 101. The Second Amendment determined that this delay would not cause "lethal effects" to sturgeon or require additional or different mitigation. Dkt. No. 1, ¶ 104.

On or about February 14, 2019, the Corps issued a Notice of Availability of a Draft Integrated Post Authorization Analysis Report (PAAR) and Supplemental Environmental Assessment for the Fish Passage at the NSBLD. Dkt. No. 1, ¶ 105. The Corps then performed simulated testing of its proposed plan, solicited public comment, and, on October 29, 2019, released the Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment, selecting Alternative 2-6d as the approved option for the NSBLD project. Dkt. No. 1, ¶¶ 109-110, 128-129. Plaintiffs are opposed to Alternative 2-6d and have therefore initiated this action. Among the various forms of relief Plaintiffs seek is a declaration that the selection of Alternative 2-6d violates the Settlement Agreement and necessitates the enjoining of inner harbor dredging of the SHEP. Dkt No. 1, ¶¶ 168, 177, 196.

GPA is the Cooperating Agency[2] for the SHEP. In this capacity, GPA has the responsibility to fulfill Georgia's non-federal responsibilities for the SHEP as required by the Water Resources Development Act of 1986. Additionally, GPA is a party to the SC Approvals for the SHEP and has agreed to provide certain financial assurance for the project, including funding operation and

---

[2] A cooperating agency is "any Federal agency other than a lead agency which has jurisdiction by law or special expertise with respect to any environmental impact involved in a proposal (or a reasonable alternative) for legislation or other major Federal action significantly affecting the quality of the human environment." 40 CFR Part 1508.5. Cooperating agencies can also include State agencies where federal agency decisions have been delegated or when a State agency has an environmental approval related to the federal action under environmental review.

7

maintenance of the dissolved oxygen system whenever necessary and to transfer to or preserve salt marsh for South Carolina. Additionally, GPA is obligated to fund approximately $287,200,000 of the total $1,018,900,000 cost for the SHEP. GPA has provided its share of the project costs to the Corps.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 24, an entity with an interest in a lawsuit may petition to enter the litigation as a party through intervention. *See* Fed. R. Civ. P. 24. A court may grant an applicant's motion for intervention either by right, Fed. R. Civ. P. 24(a)(2), or permissively. Fed. R. Civ. P. 24(b)(2). Applicants may rely on one or both methods when petitioning for intervention. *See Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1976). While decisions on motions to intervene are reviewed for abuse of discretion, because Rule 24 provides explicit criteria for adjudicating a motion to intervene, the Court's discretion is more circumscribed than in other contexts. *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544 (1st Cir. 2006). GPA is entitled to intervention of right or permissive intervention.

**I.     GPA is Entitled to Intervention of Right.**

Absent an unconditional right to intervene set forth in a federal statute, applicants seeking intervention by right must meet four requirements: (1) the motion must be timely, (2) the potential intervening party must have an interest in the subject matter, (3) the denial of the applicant's motion would impair or impede the applicant's ability to protect its interests, and (4) the applicant would not be adequately represented by current litigants. Fed. R. Civ. P. 24(a)(2). GPA satisfies all of these requirements.

GPA's motion to intervene is timely, having been filed in the early stage of this case, before the parties have initiated discovery. A motion to intervene is considered timely when it does not cause a delay in the resolution of the action or otherwise prejudice a party. Fed. R. Civ. P. 24(a)(3).

Where the case remains far from resolution, a motion to intervene is timely. *See Alexander v. Hall*, 64 F.R.D. 152, 157 (D.S.C. 1974).

As the state owner and operator of port facilities that benefit from the SHEP and a party to the SC Approvals, GPA has a strong economic interest in the SHEP. First, as the Cooperating Agency, GPA is responsible for a substantial portion of the costs of the SHEP. Any delays in construction of the SHEP impair GPA's investment and economic interests in current and future port operations. Further, if the selected mitigation alternative is modified, GPA could be required to bear the increased costs beyond its designated cost share. Courts have held that an intervenor has a sufficient interest in the subject of the litigation where its contractual rights may be impacted, *see B. Fernandez & Hnos., Inc.*, 440 F.3d at 545 (granting intervention as of right to a party whose contractual rights would have been affected by the injunction sought by the plaintiffs), or where its economic interests may be affected. *See United States v. Reserve Mining Co.*, 56 F.R.D. 408, 413 (D.C. Minn. 1972) (granting intervention of right to Chamber of Commerce and other civic and governmental groups with an economic interest in the outcome of the litigation). GPA's interests are sufficient to trigger intervention.

If GPA is not permitted to intervene, its ability to protect its interests could be impaired because the Plaintiffs seek to alter, delay, and/or stop the SHEP. In determining whether a movant seeking intervention has an interest that may be impaired, where the movant may face adverse and serious consequences if not permitted to intervene, it has shown sufficient risk of impairment. *See* 59 Am. Jur. 2d Parties § 166. Certainly, the possibility exists that this case could significantly alter the schedule of the SHEP or the scope of the project itself. For this reason, GPA's contractual and economic interests face impairment if GPA is not allowed to intervene.

Although the Corps is defending against Plaintiffs' attacks on the SHEP, because the Corps' countless studies and evaluations prove that the SHEP should proceed as planned, GPA has separate interests in the future of the SHEP, which the Corps does not share. For example, pursuant to the SC Approvals, GPA will bear costs for the SHEP that exceed the Corps' budget for the project. Where a proposed intervenor and a party do not share all of the same economic interests, the proposed intervenor may not be adequately represented by the other party, necessitating intervention. *See North Hempstead v. North Hills*, 80 F.R.D. 714, 717 (E.D.N.Y. 1978) (granting intervention as of right where, although the governmental defendants had "great incentive to preserve their power to perform their respective functions and to protect determinations made in accordance with their view of their official responsibilities," there was "a likelihood that the [intervenor would] make a more vigorous presentation of the economic side of the argument than would the (governmental defendants)").

GPA satisfies each of the four criteria required for intervention of right under Rule 24(a)(2), and its motion should therefore be granted.

**II.     GPA is Entitled to Permissive Intervention.**

While it is evident that GPA is entitled to intervention of right, in the event the Court disagrees, the Court should allow GPA to intervene under the permissive intervention standard. Applicants seeking permissive intervention must meet three requirements: (1) the motion must be timely, (2) the applicant's claim must present a common question of law or fact with the main action, and (3) the intervention of the applicant must not cause undue delay or prejudice to the original litigants in the action. Fed. R. Civ. P. 24(b).

As discussed above, GPA's motion is timely, and it does not seek to expand the issues before the Court. For this reason, its entry into the case will not create prejudice or undue delay

10

for the Plaintiffs or Defendants. Indeed, the existing parties have not objected to GPA's intervention. Additionally, GPA's involvement in the case arises out of questions of law and fact present in the existing action—whether SHEP may proceed. GPA is entitled to permissive intervention pursuant to Rule 24(b).

## CONCLUSION

GPA is entitled to intervene in this case under Rule 24 of the Federal Rules of Civil Procedure, and its motion should be granted.

|  | s/ *Rita Bolt Barker*<br>Rita Bolt Barker (USDC FED ID No. 10566)<br>Gregory J. English (USDC FED ID No. 5737)<br>**WYCHE, P.A.**<br>200 East Camperdown Way<br>Greenville, SC  29601<br>rbarker@wyche.com<br>gengish@wyche.com<br>Telephone: (864) 242-8200<br>Facsimile: (864) 235-8900<br><br>***Attorneys for Intervenor-Defendant Georgia Ports Authority***<br><br>Of Counsel:<br><br>Susan H. Richardson (***Pro Hac Vice Pending***)<br>Ronald L. Raider (***Pro Hac Vice Pending***)<br>**KILPATRICK TOWNSEND & STOCKTON, LLP**<br>1100 Peachtree Street, Suite 2800<br>Atlanta, GA 30309<br>Telephone: (404) 815-6500<br>Facsimile: (404) 815-6555<br>srichardson@kilpatricktownsend.com<br>rraider@kilpatricktownsend.com |
|---|---|

| | |
|---|---|
| December 23, 2019 | Paul H. Threlkeld (***Pro Hac Vice Pending***)<br>Special Assistant Attorney General<br>**OLIVER MANER LLP**<br>Post Office Box 10186<br>Savannah, Georgia 31412<br>(912) 236-3311<br>pht@olivermaner.com |

12