IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| STATE OF SOUTH CAROLINA, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-3132-RMG |
| ) | |
| UNITED STATES ARMY CORPS OF ) | |
| ENGINEERS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**SAVANNAH RIVERKEEPER'S MOTION TO INTERVENE AND**
**MEMORANDUM OF LAW IN SUPPORT**

"[T]he interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Amer.*, 473 F.2d 118, 130 (D.C. Cir. 1972). Consistent with this principle, and pursuant to Federal Rule of Civil Procedure 24, Savannah Riverkeeper, Inc. (SRK) moves to intervene in this case. As demonstrated below, SRK satisfies the standards for both intervention of right under Rule 24(a) and permissive intervention under Rule 24(b).

Pursuant to Local Rule 7.02, SRK's counsel has consulted with counsel for the other parties to this case. The Federal Defendants and Intervenor-Defendant Georgia Ports Authority take no position on SRK's request to intervene. The South Carolina Plaintiffs oppose SRK's request to intervene as a plaintiff, but acknowledged that they would consent to SRK's intervention as a defendant. Intervenor-Plaintiff City of Augusta opposes SRK's request to intervene.

1

# BACKGROUND

The New Savannah Bluff Lock and Dam (NSBLD) is located on the Savannah River near Augusta, Georgia. The dam was built in the late 1930s as part of a federal project to allow barge traffic between Augusta and the Port of Savannah. According to the Corps, commercial navigation ceased in the late 1970s, and the dam was eventually placed in caretaker status. Since then, federal funding has declined, leading to the deterioration of the lock and dam.

In 1999, the Corps initiated a study, authorized under Section 216 of the Flood Control Act of 1970, to determine whether to remove or modify the lock and dam.[1] The study concluded that the lock and dam no longer served its purpose and that safely maintaining the lock and dam would require costly repairs. As a result, the report recommended removal of the lock and dam. The Corps released draft findings for public comment in 2000.

Because the pool behind the dam supports recreation and water supply, local communities objected to the draft findings and to the removal of the lock and dam. In response, Congress passed legislation directing the Corps to discontinue its Section 216 analysis. The legislation also authorized the Corps to repair the lock and dam at federal expense and transfer ownership to the City of North Augusta and Aiken County. However, Congress did not allocate funds for the authorized work, and it was not completed.

Around that time, the Corps became engaged in the downstream Savannah Harbor Expansion Project (SHEP). The harbor expansion, which is currently under construction, is predicted to harm endangered sturgeon. To address this harm, the National Marine Fisheries Service issued biological opinions in 2011 and 2017 requiring the Corps to install a fish ladder at

---

[1] Section 216 of the Flood Control Act authorizes the Corps to review certain projects and report "to Congress with recommendations on the advisability of modifying the structures or their operation, and for improving the quality of the environment in the overall public interest." 33 U.S.C. § 549a.

the NSBLD to offset some of the harm caused by the harbor expansion. The required fish ladder would allow endangered sturgeon to access important habitat upstream of the lock and dam that had previously been blocked.

In spring 2016, SRK and other stakeholders presented the idea to combine the two projects – rehabilitation of the deteriorating dam and the construction of fish passage – to federal lawmakers. In response, Congress provided authority and funding through Section 1319 of the Water Infrastructure Improvements for the Nation (WIIN) Act for the Corps to design and build a fish ladder in connection with either repairing or replacing the existing lock and dam.

In February 2019, the Corps released a Draft Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment (SEA) related to NSBLD project for public comment. In the draft assessment, the Corps announced that its preferred alternative was to remove the existing lock and dam and replace it with a rock weir, which would allow for more effective fish passage over the structure. During the comment period, South Carolina and local communities again expressed concern that removing the dam would cause lower water levels in the upstream pool, hinder the navigation of recreational boats, and leave docks resting on mud flats.

SRK believes there is a middle ground approach that would (1) ensure safe, effective, and timely fish passage over the structure; (2) maintain the waters levels in the pool and meet the needs of the local communities; (3) preserve the NSBLD park to allow river access for all people; and (4) create safe passage for people around the structure. For example, after working with experts during the public comment phase, SRK advocated for a modified rock dam with crest gates and a bypass channel. The modified approach would maintain the water levels in the pool, as desired by South Carolina and Augusta, while ensuring safe, effective, and timely fish

passage over the structure. The modified approach would also protect an important historic park that provides bank fishing access to South Augusta residents. In addition, the bypass channel would create safe passage for people around the rock dam and could also be adapted into a whitewater course to benefit the local economy.

In October 2019, following the public comment period, the Corps released a Final Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment. In the report, the Corps announced that a rock weir remained its preferred alternative, but did not consider Savannah Riverkeeper's proposed modifications.

In response, on November 4, 2019, South Carolina, along with two state agencies, brought this lawsuit against the Corps and other federal defendants, alleging violations of the National Environmental Policy Act (NEPA), Section 1319 of the WIIN Act, South Carolina state law, and the SHEP settlement agreement. On December 20, 2019, before the Federal Defendants filed an answer or other responsive pleading, South Carolina moved for partial summary judgment. The Court has extended the deadline for the Federal Defendants to respond to the complaint and the summary judgment motion through February 13, 2020.

SRK now seeks to intervene as a plaintiff in this lawsuit. As explained below, if permitted to intervene, SRK would abide by all applicable deadlines so as not to delay the disposition of the case or otherwise prejudice any party.

## ARGUMENT AND CITATION OF AUTHORITIES

### I.     SRK is entitled to intervene as a matter of right.

Under Rule 24(a), a court must permit a party to intervene if: (1) the motion to intervene is timely; (2) the movant possesses a direct and substantial interest in the subject matter of the litigation; (3) the denial of intervention would impair the movant's ability to protect that interest;

and (4) the movant's interest is not adequately represented by existing parties. *Houston General Ins. Co. v. Moore,* 193 F.3d 838, 839 (4th Cir. 1999).

The Fourth Circuit, like other courts, typically construes the requirements for intervention in favor of a proposed intervenor. *See Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) ("Liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'"); *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) *(*"A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts."); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."); *Am. Maritime Transp., Inc., v. United States*, 870 F. 2d 1559, 1561 (Fed. Cir. 1989) ("[T]he requirements for intervention are to be construed in favor of intervention…."); *Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381, 384 (10th Cir. 1977) ("Our court has tended to follow a somewhat liberal line in allowing intervention."). Here, SRK satisfies each requirement and should be permitted to intervene as of right.

### A.     The application to intervene is timely.

"The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) (quoting *United States v. South Bent Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983), *rev'd on other grounds sub. nom. Devlin v. Scardelletti*, 536 U.S. 1 (2002)). Consistent with this purpose, courts typically consider "how far the underlying suit has progressed" and "the prejudice any resulting delay might cause the other parties." *Maxum Indem.*

5

*Co. v. Biddle Law Firm, PA*, 329 F.R.D. 550, 553 (D.S.C. 2019) (also noting that court should consider "why the movant was tardy in filing its motion" if applicable). The "most important consideration is whether the delay has prejudiced the other parties." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980).

Here, SRK seeks to intervene at an early stage of the case. The deadline for Federal Defendants to answer or other respond to the Complaint was yesterday, February 13, 2020. Although South Carolina has filed a motion for partial summary judgment,[2] that motion does not address its National Environmental Policy Act (NEPA) claim and thus does not relate to SRK's proposed complaint in intervention, which states only a NEPA claim. Therefore, SRK's intervention would not "derail[] a lawsuit within sight of the terminal" or otherwise prejudice any party to this litigation. Quite the opposite, if SRK is permitted to intervene, it would comply with all existing deadlines for plaintiffs so as not to delay the disposition of the case in any way.

Courts in this circuit have regularly allowed intervention after far more time has passed when the proposed intervenor does not seek to extend deadlines or otherwise delay the case. *See, e.g., Spring Const. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (affirming order granting intervention where motion to intervene was filed four years after litigation began); *Aubrey v. McCabe Trotter & Beverly, P.C.*, No. CV 2:17-656-RMG, 2018 WL 3130614, at *3 (D.S.C. June 26, 2018) (granting motion to intervene filed at the same time as summary judgment reply brief when proposed intervenor did not seek to reopen discovery); *VonRosenberg v. Lawrence*, No. CV 2:13-587-RMG, 2017 WL 3638436, at *3 (D.S.C. Aug. 23, 2017) (allowing intervention four months after answer and two weeks after initial scheduling order). Like in those cases, the Court should find that intervention is timely here.

---

[2] The deadline for Federal Defendants to respond to the motion for partial summary judgment was also February 13, 2020.

The City of Augusta has indicated that it will object to SRK's motion as untimely because South Carolina has filed a motion for partial summary judgment. However, as explained above, SRK does not seek to delay the case or extend any deadlines for the purpose of accommodating its intervention. To the contrary, SRK acknowledges that "generally speaking, an intervenor is held to take the case as he finds it" and, again, is prepared to comply with all existing deadlines in the case. *See Aubrey*, 2018 WL 3130614, at *3 (quoting *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981)).  Therefore, there is no reason that SRK's intervention should unfairly prejudice the City of Augusta or any of the other parties to this case.

### B.     SRK has a direct and substantial interest in this litigation.

The second requirement under Rule 24(a) is that the movant have a direct, substantial, legally protectable interest in the action.  This requirement "has been interpreted in broad terms," *Nat. Res. Def. Council v. Envtl. Prot. Agency*, 99 F.R.D. 607, 609 (D.D.C. 1983), and courts consistently find that environmental concerns satisfy this requirement. Indeed, other circuit courts have deemed it "indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quotation marks and citation omitted); *see also New Mexico Off-Highway Vehicle Alliance v. U.S. Forest Serv.*, 540 F. App'x 877, 880 (10th Cir. 2013); *Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527-28 (9th Cir. 1983); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1252–53 (10th Cir. 2001); *see also In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) (holding that an environmental group has the right to intervene in a suit challenging a regulation that had been at issue in an earlier administrative proceeding in which the environmental group was involved).

Similar interests are at issue here. SRK has a significant, protectable interest in the SHEP and the NSBLD project.[3] As a nonprofit organization dedicated to protecting and improving the Savannah River basin, SRK has been heavily involved in all aspects of the SHEP since the organization's inception in 2001. Among other things, SRK has served on the Environmental Impact Statement (EIS) stakeholder group throughout its existence, providing input along the way. SRK is also one of the parties to the settlement agreement related to the EIS (that forms the basis for one of South Carolina's claims in this case).

With respect to the NSBLD, SRK has engaged with community members and agency leaders throughout the decision-making process and submitted written comments on the Draft Integrated Post Authorization Analysis Report and Supplemental Environmental Impact Statement and Draft Finding of No Significant Impact. The organization has invested significant financial resources reviewing the environmental documents for the project and participating in meetings with representatives of the Corps, Georgia Ports Authority, the public, and both Augusta and North Augusta. SRK also played an important role in advocating for the inclusion of Section 1319 in the Water Infrastructure Improvements for the Nation Act of 2016 (WIIN Act), which is at issue in this litigation.

In addition, SRK has over 4,500 members in Georgia and South Carolina, many of whom live, work, and recreate in areas directly impacted by the NSBLD project. Ensuring successful

---

[3] SRK need not show Article III standing in this case because it is not seeking relief beyond that requested by the original parties. *See Town of Chester, N.Y. v. Laroe Estates, Inc.,* 137 S.Ct. 1645, 1651 (2017); *North Carolina State Conference of NAACP v. Cooper*, No. 1:18CV 1034, 2019 WL 2342353 at *1, *2 (M.D.N.C. June 3, 2019) (declining to impose an Article III standing requirement on intervenor-defendant). Nevertheless, SRK also meets the requirements for Article III standing. It has members who have suffered or imminently will suffer injuries to their recreational and aesthetic interests that are fairly traceable to the outcome of this litigation and that are likely to be redressed by a favorable decision from this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

fish passage around the NSBLD and promoting and preserving access to the river through the park will therefore have a direct impact on SRK's interests and the interests of its members, as explained in SRK's attached declaration. *See* Ex. 1 (Declaration of Tonya Bonitatibus). These interests are plainly sufficient to meet Rule 24(a)'s interest requirement.

### C. The outcome of this litigation may, as a practical matter, impede or impair SRK's ability to protect its interests.

SRK also meets the third requirement for intervention as of right. SRK and its members will likely be directly affected by the outcome of this litigation. The parties are, in effect, arguing over the preferred plan for repairing or replacing the NSBLD and for constructing fish passage over the structure—and the legal and procedural requirements that will shape that decision. As a result, the outcome of this litigation will likely affect the design of the structure, as well as the success of fish passage over the structure. By extension, this litigation will likely have significant ecological impacts on the river and surrounding habitat—all of which directly impact the interests of SRK and its members.

In addition, the outcome of this litigation may have recreational and economic impacts on SRK and its members, who use this portion of the river for various purposes, as described in the attached declaration. For all of these reasons, the outcome of this litigation will likely affect SRK's interests in protecting and preserving the integrity of the Savannah River and its surrounding habitat.

### D. SRK's interests are not adequately represented by the existing parties.

The final requirement—inadequate representation—"is satisfied if the applicant shows that representation of [its] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). It is well-established that this requirement "is not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). Instead, "the burden of

9

making th[is] showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10; *Salvors*, 861 F.3d at 1295.

Here, SRK's interests are not fully aligned with any of the parties to this lawsuit. For example, although SRK supports the Corps' plans to construct a rock dam as a fish passage solution, SRK also believes it is important for the Corps to consider and ultimately choose an alternative that meets the needs to the community, preserves the historic NSBLD park, protects river access for local residents, and creates safe passage for people around the dam. To meet these goals, SRK advocated for a middle-ground approach that included a rock dam with crest gates and a bypass channel, and remains open to other alternatives that best serve the needs of the river and the local communities.

Under Fourth Circuit precedent, this divergence of interests is more than sufficient to satisfy the fourth prong of the intervention test. *See In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (granting intervention, and noting that "although the interests of the Sierra Club and [the government] may converge" with respect to certain legal points "they may [also] diverge" with respect to others). In addition, because of the parties' differing roles and obligations, South Carolina or Augusta may be more open to settling the suit on terms different than SRK would accept. *See Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999) ("A greater willingness to compromise can impede a party from adequately representing the interests of a nonparty."). The existence of such differences is sufficient to satisfy the inadequate representation prong of Rule 24(a). *See id.*

Augusta and South Carolina appear to agree that they do not adequately represent SRK's interests. In fact, they have indicated that they believe SRK should intervene on the side of the defendants because SRK and the other plaintiffs have taken contrary views on certain issues. But

10

the law does not require that a proposed intervenor-plaintiff be perfectly aligned with all other plaintiffs in order to intervene—in fact, it forbids it. *See* Fed. R. Civ. P. 24(a) (allowing intervention of right when certain conditions are met "*unless existing parties adequately represent [proposed intervenor's] interest*") (emphasis added); *see also* Wright and Miller, *Federal Practice and Procedure*, 7C Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ("The easiest case is that in which … the absentee's interest is *not represented at all*. An interest that is not represented is surely not adequately represented and intervention must be allowed.") (emphasis added).

As explained above, SRK seeks to intervene as a plaintiff because it advocated for a commonly used alternative that was not considered by the Corps in the Supplemental Environmental Assessment. As set forth in SRK's proposed complaint (attached as Ex. 2), the Corps' inadequate evaluation of this alternative was arbitrary and capricious in violation of NEPA. In order to assert a NEPA claim based on these flaws and protect its interest in seeing all reasonable alternatives evaluated, SRK desires to intervene as a plaintiff.

## II.     In the alternative, SRK should be granted permissive intervention.

In the alternative, SRK requests that the Court grant permissive intervention pursuant to Rule 24(b). Once a party seeking to intervene under Rule 24(b) shows that "(1) his application is timely; and (2) his claim or defense and the main action have a question of law or fact in common," it is within the Court's discretion to allow the party to intervene. *Chiles*, 865 F.2d at 1213. In considering whether to grant the motion, the Court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).

As discussed above, SRK's motion to intervene is timely since it was filed at an early stage in this litigation. As a result, there will be no undue delay or prejudice to the original parties as a result of SRK's intervention. In addition, SRK's claims plainly have common issues of fact and law with the underlying claims and defenses in this action. Thus, in the event the Court does not grant SRK's Motion to Intervene as of right under Rule 24(a), the Court should grant SRK leave to intervene under Rule 24(b).

## CONCLUSION

For all of the foregoing reasons, SRK respectfully requests that it be granted the right to intervene in this proceeding.

Respectfully submitted this 14th day of February, 2020.

SOUTHERN ENVIRONMENTAL
LAW CENTER

/s/ *Christopher K. DeScherer*
Christopher K. DeScherer
South Carolina Bar No. 77753
William W. Sapp
Georgia Bar No. 626435
*Pro hac vice application forthcoming*
Megan Hinkle Huynh
Georgia Bar No. 877345
*Pro hac vice application forthcoming*
Angela Kilbert
South Carolina Bar No. 103651
*Application for admission forthcoming*
525 East Bay Street, Suite 200
Charleston, South Carolina
Phone: (843)720-5270
Fax: (843)720-5240
cdescherer@selcsc.org
bsapp@selcga.org
mhuynh@selcga.org
akilbert@selcsc.org

*Counsel for Savannah Riverkeeper*

**CERTIFICATE OF SERVICE**

I certify that on February 14, 2020, I electronically filed the foregoing *Motion to Intervene and Memorandum of Law in Support* with the Clerk of Court using the CM/ECF system.

/s/ *Christopher K. DeScherer*