IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| STATE OF SOUTH CAROLINA, et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES ARMY CORPS OF )<br>ENGINEERS, et al., )<br>)<br>Defendants. )<br>) | Case No. 1:19-cv-3132-RMG |

## PROPOSED COMPLAINT IN INTERVENTION

1. Pursuant to Federal Rule of Civil Procedure 24, Savannah Riverkeeper has moved to intervene in this case.

2. This complaint in intervention challenges the United States Army Corps of Engineers' issuance of the Integrated Post Authorization Analysis Report and Supplemental Environmental for Fish Passage at the New Savannah Bluff Lock and Dam (NSBLD) under the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA).

### PARTIES

1. Plaintiff State of South Carolina is a sovereign state that borders the Savannah River.

2. Plaintiffs South Carolina Department of Health and Environmental Control and Savannah River Maritime Commission are agencies of the State of South Carolina. The State, DHEC, and Commission are referred to collectively as South Carolina.

3. Intervenor-Plaintiff Augusta, Georgia is a municipal corporation in the State of Georgia.

4.      Defendant United States Army Corps of Engineers is the federal agency that oversees the project at issue in this case.

5.      Defendant United States Army Corps of Engineers, Savannah District, is a unit of Defendant United States Army Corps of Engineers.

6.      Defendant Ryan McCarthy is the Secretary of the Army and is sued in his official capacity.

7.      Defendant Lieutenant General Todd T. Semonite is the Commanding General and Chief of Engineers of the U.S. Army Corps of Engineers and is sued in his official capacity.

8.      Defendant Major General Diana M. Holland is the Commanding General of the South Atlantic Division of the United States Army Corps of Engineers and is sued in her official capacity.

9.      Defendant Colonel Daniel H. Hibner is the District Commander for the U.S. Army Corps of Engineers, Savannah District and is sued in his official capacity. Collectively, all defendants are referred to as the Federal Defendants.

10.     Intervenor-Defendant Georgia Ports Authority is an agency of the State of Georgia that develops, maintains, and operates ocean and inland river ports within Georgia, including the Port of Savannah.

11.     Proposed Intervenor Savannah Riverkeeper (SRK) is a non-profit organization that strives to protect and improve the Savannah River Basin river basin through education, advocacy, and action.

12.     SRK has over 4,500 members in Georgia and South Carolina and works on behalf people in both Georgia and South Carolina who rely on the Savannah River watershed for drinking water, fishing, recreation, and economic development.

13. SRK has been heavily involved in all aspects of the Savannah Harbor Expansion Project (SHEP) since its inception in 2001. Among other things, SRK served on the environmental impact statement stakeholder group and is a party to the settlement agreement in *Savannah Riverkeeper v. United States Army Corps of Engineers*, No. 9:12-610-RMG (D.S.C.).

14. As part of that process, SRK has also been heavily involved in NSBLD project. The organization played an important role in the inclusion of Section 1319 in the Water Infrastructure Improvement for the Nation (WIIN) Act and has been heavily engaged in public outreach surrounding NSBLD issues. SRK also submitted comments on the Draft Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment. *See* Ex. 1.

15. In addition, SRK's office, located at 328 Riverfront Drive, Augusta, Georgia, is located on fourteen acres of riverfront property that is directly impacted by the water levels upstream of the NSBLD. *See* USACE Shoreline Tool, http://water.sas.usace.army.mil/nsbld/.

16. Throughout its involvement in NSBLD issues, SRK has advocated for an approach that (1) ensures safe, effective, and timely fish passage over the structure, (2) meets the needs of the local communities; (3) preserves the NSBLD park to allow river access for all people, and (4) creates safe passage for people around the structure.

## JURISDICTION AND VENUE

17. SRK's claims arise under NEPA, 42 U.S.C. §§ 4321 *et seq.*, the APA, 5 U.S.C. §§ 701 *et seq*.

18. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and may issue declaratory and other relief pursuant to 28 U.S.C. §§ 2201–02.

19. SRK is entitled to bring this action under the APA, 5 U.S.C. §§ 701–706.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a

substantial portion of the property and land that is the subject of this action is within the boundaries of the State of South Carolina and Aiken County.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. New Savannah Bluff Lock and Dam

21. The NSBLD is located on the Savannah River near Augusta, Georgia.

22. The lock and dam was built in the late 1930s as part of a federal project to allow barge traffic between Augusta and the Port of Savannah.

23. According to the Corps, commercial navigation ceased in the late 1970s, and the dam was eventually placed in caretaker status.

24. Since then, federal funding has declined, leading to the deterioration of the lock and dam.

25. In 1999, the Corps initiated a study, authorized under Section 216 of the Flood Control Act of 1970, to determine whether to remove or modify the lock and dam.

26. The study concluded that the lock and dam no longer served its purpose and that safely maintaining the lock and dam would require costly repairs. As a result, the report recommended removal of the lock and dam. The Corps released draft findings for public comment in 2000.

27. Because the pool behind the dam supports recreation and water supply, local communities objected to the draft findings and the removal of the lock and dam.

28. In response, Congress passed legislation directing the Corps to discontinue its Section 216 analysis. The legislation also authorized the Corps to repair the lock and dam at federal expense and transfer ownership to the City of North Augusta and Aiken County. However, Congress did not allocate funds for the authorized work, and it was not completed.

    **B.**    **Savannah Harbor Expansion Project Mitigation Requirements and the WIIN Act**

29. Around that time, the Corps became engaged in the downstream Savannah Harbor Expansion Project (SHEP).

30. The harbor expansion, which is currently under construction, harms endangered sturgeon.

31. To address these harms, the National Marine Fisheries Service issued a biological opinion requiring the Corps to install fish passage at the upstream lock and dam to offset some of the harm caused by the harbor expansion. The required fish passage would allow endangered sturgeon to access important habitat upstream of the lock and dam that had previously been blocked by the dam.

32. In spring 2016, SRK and other stakeholders presented the idea to combine the two projects – rehabilitation of the deteriorating dam and the construction of fish passage – to federal lawmakers.

33. In response, Congress provided authority and funding through Section 1319 of WIIN Act for the Corps to design and build a fish passageway in connection with either repairing or replacing the existing lock and dam.

    **C.**    **The Supplemental Environmental Assessment**

34. In February 2019, the Corps released a Draft Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment related to the NSBLD project for public comment.

35. In the draft assessment, the Corps announced that its preferred alternative was to remove the lock and dam and replace it with a rock weir, which would allow for more effective fish passage.

36.     During the comment period, South Carolina and local communities again expressed concern that removing the dam would cause lower water levels in the upstream pool, hinder the navigation of recreational boats, and leave boat docks resting on mud flats.

37.     After working with experts during the public comment phase, SRK advocated for a modified rock dam with crest gates and a bypass channel.

38.     The modified approach would maintain the water levels in the pool, as desired by South Carolina and Augusta, while ensuring safe, effective, and timely fish passage.

39.     The modified approach would also protect a historic park that provides bank fishing access to South Augusta residents.

40.     The bypass channel would create safe passage for people around the rock dam and could also be adapted into a whitewater course to benefit the local economy.

41.     In October 2019, following the public comment period, the Corps released a Final Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment.

42.     In the report, the Corps announced that a rock weir remained its preferred alternative, but did not consider SRK's proposed modifications.

## LEGAL FRAMEWORK

**A.     National Environmental Policy Act**

43.     NEPA, 42 U.S.C. §§ 4321 *et seq.*, is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1. NEPA requires federal agencies to take a hard look at the environmental consequences of an agency action before proceeding with that action. *See* 42 U.S.C. §§ 4321, 4332(2)(C); 40 C.F.R. §§ 1501.2, 1502.5.

44.     To that end, agencies must "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R.

§ 1500.1(b). As part of this process, agencies' evaluations must incorporate "[a]ccurate scientific analysis" and be based on "high quality" scientific information. *Id.*

45. Among other things, an agency's NEPA analysis must analyze reasonable alternatives that would avoid or minimize the action's adverse impacts, *id*. § 1502.1, and set out measures to mitigate those adverse effects, 40 C.F.R. § 1502.14(f).

46. The agency's alternatives analysis—which is the "heart" of the NEPA analysis—must "present the environmental impacts of the proposal and the alternatives in comparative form, thus sharply defining the issues and providing a clear basis for choice among options by the decisionmaker and the public." *Id*. § 1502.14.

### B.     Administrative Procedure Act

47. The APA grants a right of judicial review of final agency actions to any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702.

48. Under the APA, a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or adopted "without observance of procedure required by law." *Id*. § 706(2)(A), (D). The APA grants to a reviewing court the authority to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). A reviewing court may "issue all necessary and appropriate process" to "preserve status or rights pending conclusion of the review proceedings." *Id.* § 705.

### CLAIM I: The NEPA analysis does not adequately analyze reasonable alternatives.

49. SRK incorporates by reference the allegations contained in the preceding paragraphs.

50. NEPA requires federal agencies to take a hard look at the environmental consequences of an agency action before proceeding with that action and to set out measures to mitigate those adverse effects.

51. NEPA also requires federal agencies to analyze reasonable alternatives that would avoid or minimize the proposed action's adverse impacts.

52. The Federal Defendants failed to take a hard look at the full range of adverse effects.

53. In addition, the Federal Defendants failed to adequately consider a reasonable range of alternatives in their NEPA analysis, including but not limited to installation of a rock weir containing a series of crest gates, also called automated flashboards, across the crest of the weir.

54. SRK proposed this alternative in detail its comments on the draft Supplemental Environmental Assessment:

> SRK along with a variety of fish passage experts have focused our efforts on an adaptation of Alternative 2-3 that includes the addition of gates and a bypass channel through the historic park. The adapted 2-3 has the lowest floodplain bench, thus, the historic park would not have to be used as a flood retention pond…. The fixed weir height set at 107 NAVD 29 could remain, but the addition of perhaps 6' crest gates (this height would need to be determined based upon refined design and modeling) would allow the ability to maintain a pool upstream in Downtown Augusta during drought within 1.5' of current conditions.

SRK Comments (Ex. 1) at 9.

55. The cities of Augusta and North Augusta also acknowledged this alternative in their technical comments:

> This option has the potential to increase the water surface in the upstream pool during lower flows (as compared to a fixed crest rock ramp) while reducing the elevation of higher frequency flood flows providing some level of flood control. Overall the advantage of a crest gate system is adjustability and flexibility with demonstrated low life-cycle costs. From a fish passage perspective, crest gates

>could improve passage conditions in that they can maintain minimum target depths while effectively reducing passage velocities. Another benefit is that the addition of crest gates would reduce variations in peak velocities throughout a wider range of flows.

City of Augusta Technical Comments at App. H-3.

56. Although crest gates are commonplace in projects across the country, the Corps' did not consider this alternative.

57. The Corps' failure to take a hard look at the adverse impacts and their inadequate evaluation of this and other alternatives is arbitrary and capricious in violation of NEPA and the APA.

## PRAYER FOR RELIEF

SRK respectfully requests that this Court:

A. Declare that the Corps' issuance of the Supplemental Environmental Assessment violates NEPA and is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law in violation of the APA;

B. Award SRK the costs of this action, including their reasonable attorneys' fees; and

C. Grant SRK such additional relief as the Court deems just and proper.

Respectfully submitted this 14th day of February, 2020.

        **SOUTHERN ENVIRONMENTAL LAW CENTER**

        /s/ *Christopher K. DeScherer*
        Christopher K. DeScherer
        South Carolina Bar No. 77753
        William W. Sapp
        Georgia Bar No. 626435
        *Pro hac vice application forthcoming*
        Megan Hinkle Huynh
        Georgia Bar No. 877345
        *Pro hac vice application forthcoming*
        Angela Kilbert
        *Application for admission forthcoming*
        525 East Bay Street, Suite 200
        Charleston, South Carolina
        Phone: (843)720-5270
        Fax: (843)720-5240
        cdescherer@selcsc.org
        bsapp@selcga.org
        mhuynh@selcga.org
        akilbert@selcsc.org

        *Counsel for Savannah Riverkeeper*

**CERTIFICATE OF SERVICE**

    I certify that on February 14, 2020, I electronically filed the foregoing *Complaint in Intervention* with the Clerk of Court using the CM/ECF system.

                                               /s/ *Christopher K. DeScherer*