**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, | ) | |
| SOUTH CAROLINA DEPARTMENT OF | ) | |
| HEALTH AND | ) | |
| ENVIRONMENTAL CONTROL, | ) | |
| SAVANNAH RIVER MARITIME | ) | |
| COMMISSION, and | ) | |
| AUGUSTA, GEORGIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C/A No. 1:19-cv-03132-RMG |
| v. | ) | |
| | ) | |
| UNITED STATES ARMY CORPS OF | ) | **SOUTH CAROLINA'S RESPONSE IN** |
| ENGINEERS, | ) | **OPPOSITION TO THE SAVANNAH** |
| UNITED STATES ARMY CORPS OF | ) | **RIVERKEEPER INC.'S MOTION TO** |
| ENGINEERS, SAVANNAH DISTRICT, | ) | **INTERVENE** |
| RYAN MCCARTHY, in his official | ) | |
| capacity as Secretary of the Army, | ) | |
| LT. GENERAL TODD T. SEMONITE, | ) | |
| in his official capacity as | ) | |
| Commanding General and Chief | ) | |
| of Engineers, U.S. Army Corps of Engineers, | ) | |
| MAJOR GENERAL DIANA M. HOLLAND, | ) | |
| in her official capacity as Commanding | ) | |
| General, South Atlantic Division, | ) | |
| U.S. Army Corps of Engineers, | ) | |
| COLONEL DANIEL H. HIBNER, in his | ) | |
| official capacity as District Engineer, | ) | |
| U.S. Army Corps of Engineers, | ) | |
| Savannah District, and | ) | |
| GEORGIA PORTS AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to Rules 7.05 and 7.06 of the Local Rules of the United States District Court for

the District of South Carolina (D.S.C.), Plaintiffs State of South Carolina, South Carolina

Department of Health and Environmental Control, and the Savannah River Maritime Commission

(collectively "South Carolina"), collectively file this response in opposition to Proposed Intervenor

Savannah Riverkeeper's ("Riverkeeper") Motion to Intervene. For the reasons set forth below, the Riverkeeper has not established that it is entitled to intervene as of right, and this Court should deny permissive intervention. Further, should the Court be disposed to granting intervention, under no circumstances should the Riverkeeper be permitted to intervene in this action as a plaintiff, as the Riverkeeper's actions, conduct, and relief sought with respect to the New Savannah Bluff Lock and Dam (NSBLD) project align with the Defendants, not the Plaintiffs, are directly at odds with the positions and interests of the Plaintiffs and, in fact, have directly contributed to the harm which Plaintiffs seek to remedy in this lawsuit.

## I.    The Riverkeeper is not entitled to intervene as of right.

The Riverkeeper's request to intervene as of right should be denied as it has failed to establish all four grounds required by Rule 24(a)(2). Rule 24(a)(2) provides that a party must be allowed to intervene as of right where, on timely motion, the proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Thus, to intervene as of right, a movant must establish: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion for leave to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to litigation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under Rule 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." *U.S. ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F.Supp.2d 934, 937 (D. Md. 2004).

Failure to satisfy even one of these requirements is sufficient to warrant denial of a motion to intervene as a matter of right. *NAACP v. New York*, 413 U.S. 345, 369 (1973).

A. The Riverkeeper's motion is untimely.

The Riverkeeper's request for intervention is untimely and must be denied. "[T]imeliness is a cardinal consideration of whether to permit intervention." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (internal citation omitted). "Rule 24 is silent as to what constitutes a timely application and the question must therefore be answered in each case by the exercise of the sound discretion of the court." *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974) (citations omitted). A reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene. *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention. 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed.).

"Mere passage of time is but one factor to be considered in light of all the circumstances." *Spring Const. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (citing *Atkins v. State Board of Ed.*, 418 F.2d 874 (4th Cir. 1969)). The timeliness requirement is designed to ensure that the original parties should not be prejudiced by the applicant's failure to apply sooner. *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970). The most important consideration in the timeliness determination is whether the delay has prejudiced the other parties. *Spring Const. Co., Inc.*, 614 F.2d at 377. Thus, even where only a short period of time has elapsed since the commencement of the suit, a request to intervene is untimely where the suit has progressed significantly in that time.

*S.C. Electric & Gas Co. v. Whitfield*, 3:19-CV-01795-JMC, 2018 WL 3613932, at *2 (D.S.C. July 28, 2018).

The Riverkeeper's failure to timely move to intervene will prejudice the other parties in this matter. With the Riverkeeper's full knowledge and understanding, the present case has progressed significantly during the period that the Riverkeeper delayed requesting permission to intervene. The Riverkeeper was aware of this matter from the time it was filed, and even sent a letter to the original parties at the outset of the litigation seeking to be included in any settlement discussions. Ex. 1, Bonitatibus December 9, 2019 letter. Unlike the other party-intervenors in this matter who sought intervention shortly after the Complaint was filed, the Riverkeeper waited for over three months until the parties were in the midst of briefing the relevant issues, including South Carolina's motion for partial summary judgment. Allowing the Riverkeeper to intervene at this stage will only delay the briefing and resolution of these issues. The Riverkeeper's request for intervention is therefore prejudicially untimely, and this Court should deny it.

B. <u>The Riverkeeper has not identified a sufficient interest in the subject of this suit.</u>

The Riverkeeper's request to intervene as of right should also be denied because it has failed to establish that it has a significant and direct interest in the litigation. "Although the nature of an 'interest' sufficient to support intervention of right has yet to be precisely determined, it is clear that such an interest 'must be significant, must be direct rather than contingent, and must be based on a right which belongs to the proposed intervenor rather than to an existing party to the suit.'" *Calloway v. Westinghouse Elec. Corp.*, 115 F.R.D. 73, 74 (M.D. Ga. 1987) (quoting *United States v. Carrols Development Corp.*, 454 F.Supp. 1215 (N.D.N.Y.1978); *Vazman v. Fidelity International Bank*, 418 F.Supp. 1084 (S.D.N.Y.1976)).

The Riverkeeper alleges that it has a "significant, protectable interest in the SHEP and NSBLD project." Dkt.#38 at 8. In support of this asserted interest, the Riverkeeper cites its involvement in crafting the SHEP EIS. *Id.* However, the original SHEP EIS is not at issue in this case, and none of the parties are seeking to revisit it. The Riverkeeper also cites its involvement in the NSBLD Project "decision-making process." *Id.* According to the Riverkeeper, this involvement included championing changes to Federal law before local and federal lawmakers, resulting in the WIIN Act, and commenting on the Draft Integrated Post Authorization Analysis Report and Supplemental Environmental Statement and Draft Finding of No Significant Impact. Ex. 2, Bonitatibus August 28, 2017 letter. These comments will be part of the administrative record in the NEPA challenge in this matter, and, thus, will already be considered by the Court, if and when it conducts its NEPA review. However, this interest by the Riverkeeper is no greater than the approximately 350 other individuals and entities who commented on the Draft SEA. Surely, an individual or entity does not have a significant interest in or an entitlement to intervene *as of right* in pending litigation simply by virtue of submitting comments during the NEPA process, and the Riverkeeper cites not case law in support of such a proposition.

The Riverkeeper's argument that it has an economic interest in this litigation is also wholly insufficient. Dkt.#38 at 8-9. The Riverkeeper argues that it has invested significant financial resources in preparing and reviewing documents for the NSBLD Project, dkt.# 38 at 8, and later asserts that the outcome of the litigation may have economic impacts on the Riverkeeper and its members, dkt.#38 at 9. However, an economic interest in litigation does not rise to the significant interest required for intervention as of right. "General economic interests are not protectable and cannot serve as the basis for intervention." *U.S. v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 839 (8th Cir. 2009). The Riverkeeper is not the only entity that has an economic stake in this matter,

and the mere fact that it expended money in commenting on a project that it would have commented on regardless of any subsequent litigation is insufficient to establish an interest in this matter. The Riverkeeper did not expend this money in anticipation of this litigation; it expended that money as part of its typical activities. As such, the Riverkeeper's alleged economic interest is not a significant interest sufficient to allow intervention as of right.

Indeed, the Riverkeeper's proposed complaint in intervention, dkt.#38-2, demonstrates the paucity of actual legal interest in the litigation, while revealing the true economic interest eyed by the Riverkeeper. In seeking intervention, the Riverkeeper explains that it "states only a NEPA claim," dkt.#38 at 6, that is not addressed by South Carolina's pending motion for summary judgment. The Riverkeeper provides the following explanation of its purpose and interest in seeking intervention:

> As explained above, SRK seeks to intervene as a plaintiff because it advocated for a commonly used alternative that was not considered by the Corps in the Supplemental Environmental Assessment. As set forth in SRK's proposed complaint (attached as Ex. 2), the Corps' inadequate evaluation of this alternative was arbitrary and capricious in violation of NEPA. In order to assert a NEPA claim based on these flaws and protect its interest in seeing all reasonable alternatives evaluated, SRK desires to intervene as a plaintiff.

Dkt.#38 at 11. Thus, the interest on which the Riverkeeper bases its intervention is expressly limited to forcing the Corps to explicitly consider an alternative that it allegedly did not sufficiently consider in the course of its NEPA review. Notwithstanding, the Riverkeeper goes to great length to emphasize the fact that it suggested consideration of its preferred alternative to the Corps in the course of its submitted comments on the Supplemental Environmental Analysis, but the Corps declined to adopt the Riverkeeper's alternative. Dkt.#38 at 10-11 ("SRK advocated for a middle-ground approach that included a rock dam with crest gates and a bypass channel," but "the Corps'

inadequate evaluation of this alternative was arbitrary and capricious"); dkt#38-2 at ¶¶36-42, 54, and 56-67.

However, NEPA claims which merely allege that the plaintiff's preferred alternative was not adequately considered or chosen have universally been rejected as failing to advance a viable NEPA cause of action. *E.g.*, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) ("[I]t is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process."); *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 978 (9th Cir. 2006) ("NEPA does not require [a party] to *explicitly consider* every possible alternative to a proposed action.") (emphasis supplied); *Coalition for Responsible Regional Development v. Coleman*, 555 F.2d 398, 400 (4th Cir. 1977) (holding that an agency is not "obligated to consider in detail each and every conceivable variation of the alternatives stated; it need only set forth those alternatives sufficient[ly] to permit a reasoned choice.") (quoting *Brooks v. Coleman*, 518 F.2d 17, 19 (9th Cir. 1975)) (internal quotations omitted). Thus, the Riverkeeper has failed to identify a legally cognizable claim under NEPA, and intervention should be rejected.

Instead, the interest the Riverkeeper appears to be trying to protect through intervention is purely an economic interest in the form of protection of the settlement proceeds it secured in the initial Settlement Agreement of the SHEP litigation, as well as prospective economic interests in the form of additional settlement proceeds derived from this lawsuit to fund its activities and pet projects, including turning the fish passage mitigation feature into a source of potential future income generation from which it can benefit.[1] In its proposed complaint in intervention, dkt.#38-

---

[1] The Riverkeeper is not only the driving force behind the WIIN Act change in law, but also the "Rock the Dam" campaign that it initiated to replace the NSBLD with a rock weir structure that would significantly lower the pool level (in contravention of the plain language of the WIIN Act) and create a whitewater attraction that could potentially benefit the Riverkeeper financially.

2, the Riverkeeper baldly seeks attorneys' fees and costs from this action, which appears to be in line with its *modus operandi* of intervening in actions with an eye to settling on financially advantageous terms allowing it to sustain its existence, rinse and repeat.[2] Yet, here again, courts have resoundingly rejected attempts to intervene under Rule 24(a)(2) when the identified interest in support of intervention is pecuniary. *See*, *e.g.*, *Montana v. United States Envtl. Protection Agency*, 137 F.3d 1135, 1142 (9th Cir. 1998) (potential effect on property values from promulgation of new water quality standards is "a speculative and purely economic interest [which] does not create a protectable interest in litigation concerning a statute that regulates environmental, not economic, interests"); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) ("In general, a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene."); *Port of Astoria, Or. v. Hodel*, 595 F.2d 467, 475 (9th Cir.1979) ("[P]ecuniary losses and frustrated financial expectations that are not coupled with environmental considerations ... are outside of NEPA's zone of interests.").

The Riverkeeper has alleged minimal interests in the outcome of this litigation; however, those interests appear to be purely economic interests that are insufficient to sustain its stated goal of advancing a NEPA claim against the Corps. Any additional interests identified by the Riverkeeper are shared by the general public, and as discussed in § I.D, *infra*, are adequately represented by various government entities. The Riverkeeper's minimal interests in the property

---

[2] *See*, discussion *infra*, Ex. 11, *Editorial: Riverkeeper Doesn't Fit in this Suit*, The Augusta Chronicle, Feb. 22, 2020 (wherein the mission of the Riverkeeper is described as "filing or joining lawsuits with an environmental angle, then fighting or negotiating toward a settlement that can keep [the Riverkeeper] sustainable," a fact confirmed by the original Riverkeeper and current Chairman of the Riverkeeper's Board, describing a strategy of "[u]sing legal fees gained in one case to support another case").

or transaction that is the subject of this litigation do not rise to the level of significance to allow for intervention as of right, and this Court should deny its request to do so.

C. <u>Denial will not impede the Riverkeeper's ability to protect its alleged interests.</u>

The Riverkeeper has not shown a practical impairment of any of its alleged interests if intervention is denied. "Literally, Rule 24(a)(2) requires a practical impairment of the ability to *protect* an interest and not a practical impairment of the ability to *assert* an interest." *TPI Corp. v. Merchandise Mart of South Carolina, Inc.*, 61 F.R.D. 684, 688 (D.S.C. 1974) (emphasis in original). The degree of impairment which constitutes "practical" impairment is essentially the same as the "prejudice" test used by the courts in determining indispensability. *General Motors Corp. v. Burns*, 50 F.R.D. 401, 404 (D. Hi. 1970). That the Riverkeeper is not an indispensable party to this litigation is beyond question, and there has been no argument to the contrary.

The Riverkeeper states that the parties are "arguing over the preferred plan for repairing or replacing the NSBLD and for constructing fish passage over the structure." Dkt.#38 at 9. This is not only factually and demonstrably incorrect, it reveals the Riverkeeper's simplistic take on and bias with respect to the NSBLD and this case. In any event, the Riverkeeper's ability to assert its position on the appropriate preferred plan will not be impaired by the outcome of this litigation.

D. <u>The Riverkeeper's alleged interests will be adequately represented by the parties.</u>

The Riverkeeper's alleged interests are adequately represented in this matter because, regardless of whether it is a plaintiff or defendant, government entities from all levels are parties. "[I]t is among the most elementary functions of a government to serve in a representative capacity on behalf of its people. In matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest." *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013). To hold otherwise would place a severe and unnecessary burden on government

agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation. *Id.* at 352. In light of this duty, the Fourth Circuit has joined with other circuits in holding that a more exacting and stronger showing of inadequacy is required where a proposed intervenor shares the same objective as a government party. *Id.* at 351-52.

The Riverkeeper has not met this exacting showing of inadequacy required for intervention on either side of this matter. Indeed, the Riverkeeper appears to concede this fact expressly, stating that "it is not seeking relief beyond that requested by the original parties." Dkt.#38 at 8 n.3. As such, its efforts in this litigation to achieve the same relief sought by the Plaintiffs will merely be duplicative, adding to the expense of litigation and use of judicial resources (responding to duplicative arguments and responses) for both the parties and the Court. *E.g.*, *Virginia v. Westinghouse,* 542 F.2d 214, 216 (4th Cir. 1976) (denying intervention as of right where the proposed intervenor seeks the same relief as the existing parties). Thus, by its own admission, the Riverkeeper's alleged interests are more than adequately represented by government entities on both sides of this litigation. The Riverkeeper alleges that its interest is in protecting both the fish passage and the pool. Dkt.#38 at 8. The Riverkeeper also alleges that it has an interest in protection of the NSBLD park, the historical elements of the NSBLD and the park, and a lease for a portion of the park. *Id.* at 8-9. Each of these alleged interests is already well represented in this action. As discussed in § III, *infra*, the Riverkeeper and Defendant Intervenor GPA were the driving forces behind the Federal Defendants' efforts to pass the WIIN Act. The Riverkeeper helped draft the proposed language and championed the law before Congress. Ex. 3, Bonitatibus July 12, 2016 email. And the Riverkeeper has adopted the Federal Defendant's interpretation of the WIIN Act. Ex. 4, Bonitatibus interview at 17. The Federal Defendants and Defendant Intervenor GPA will

thus adequately represent the Riverkeeper's alleged interests in regard to the interpretation and application of the WIIN Act.

The Riverkeeper's alleged interest in South Carolina's NEPA action is also adequately represented. Both South Carolina and Augusta allege that the Corps' alternatives analysis was inadequate in that it failed to consider any alternatives that comply with the plain language of the directives of the WIIN Act. As discussed above, the Riverkeeper's NEPA claim makes no such argument, instead limiting its argument to criticism of the Corps' decision not to choose the Riverkeeper's preferred alternative, which itself has not been shown to comply with the directives of the WIIN Act. Further, the Riverkeeper's substantive position on the NEPA analysis – that the Corps should have considered other rock weirs but was correct in concluding that the dam must be demolished and that any preferred plan is only required to maintain the functionality of the pool – mirrors the positions advanced by the Defendants, not the Plaintiffs. While the Riverkeeper argues that South Carolina and Augusta are likely willing to settle this matter on terms different from itself, dkt.#38 at 10, there is simply no evidence to support this claim. South Carolina is a party to the Settlement Agreement and is seeking to maintain the Settlement Agreement's terms and conditions. This includes the requirement that mitigation for the loss in habitat to shortnose sturgeon resulting from the inner harbor dredging of the SHEP project be accomplished prior to or concurrent with the loss in habitat. South Carolina is also interested in seeing that the clear legislative intent of the WIIN Act is realized. The Riverkeeper's alleged interest in the WIIN Act and the Corps' decision to construct a rock weir will also be represented by the Federal Defendants in any settlement discussions. Further, "the relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart v. Huff*, 706 F.3d at 353.

South Carolina has a substantial interest in both seeing that appropriate and timely mitigation is in place for the habitat loss to shortnose sturgeon and in maintenance of the pool. Likewise, the Defendants have alleged interests in implementation of a mitigation feature that involves the construction of a fish passage structure and maintenance of the pool's "functionality." The Riverkeeper agrees with the interests of the Defendants and has taken the position that the WIIN Act merely requires maintenance of the pool's functions and uses, a position contrary to the plain language of the WIIN Act and the arguments made by South Carolina and Augusta. Ex. 4, Bonitatibus interview at 17. This position will be more than adequately represented by the Federal Defendants, who have already advanced this interpretation in the litigation. Additionally, Augusta has expressed significant interests in protecting the pool, as well as the historic nature of the dam and its park. Dkt.#23 at 6, 7; dkt.#23-6 at 19. As Augusta is the owner of the property that is the subject of the lease the Riverkeeper seeks to protect, that interest is also adequately represented. The Riverkeeper's interests in these matters are thus adequately represented.

Notwithstanding, the Riverkeeper believes that its interest in a "middle ground approach" is significant and will not be adequately represented. Dkt.#38 at 3. However, both sides of this litigation are representing this alleged interest. Indeed, Augusta has previously championed an alternative that is similar to the middle ground the Riverkeeper offers. Both sides want to "ensure safe, effective, and timely fish passage over the structure," both South Carolina and Augusta seek to "maintain the water levels in the pool and meet the needs of the local communities," while the Corps is allegedly interested in maintaining the pool's uses, and Augusta has expressed interests in preserving the NSBLD park "to allow river access for all people" as well as the creation of a "safe passage for people around the structure." *Id.*; dkt.#23 at 47, 61, 63-64, 66-67; dkt.#23-5 at 26-27; and dkt.#23-6 at 13-26. Not only does the Riverkeeper's allegation that its alleged interests

will not be adequately represented in settlement talks fail to rise to the exacting standard required

for intervention in this matter, there is also no evidence that any proposed settlement would negate

said interests.

The Riverkeeper further asserts that its interest in this matter is in representing its members,

who "live, work, and recreate in areas directly impacted by the NSBLD project." Dkt.#38 at 8-9.

The Riverkeeper self-identifies its role as protecting the "local" interests. However, these interests

are clearly represented by the current parties to this lawsuit. And its specific interests in the

environment are unpersuasive –

> stronger, more specific interests do not adverse interests make—and
> they surely cannot be enough to establish inadequacy of
> representation since would-be intervenors will nearly always have
> intense desires that are more particular than the state's (or else why
> seek party status at all). Allowing such interests to rebut the
> presumption of adequacy would simply open the door to a
> complicating host of intervening parties with hardly a
> corresponding benefit.

*Stuart v. Huff*, 706 F.3d at 353. South Carolina has a duty to represent its public's interests,

including the interests of those who live in the affected area, and DHEC has an interest in seeing

that the State's environmental protection laws are adequately enforced. Augusta also has a duty to

represent the interests of local citizens, the very citizens that the Riverkeeper alleges it must

represent. Defendants too have a responsibility to represent the public. Each of these public entities

is directly accountable to the citizens residing in areas directly impacted by the NSBLD Project.

They are also subject to open records laws that enable these citizens to see their decision-making

processes. The Riverkeeper, a private non-profit, is neither directly accountable to the public nor

is it subject to open records laws. In light of all of these indisputable facts, the Riverkeeper has

failed to show that its interests will be inadequately represented by the existing parties, much less

the strong showing required when government entities of all levels are parties on both sides of the

litigation. The Riverkeeper has simply failed to establish that these governmental entities will not adequately represent the interests of the public that they serve. "When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented," which can only be rebutted by a showing of "adversity of interest, collusion, or nonfeasance." *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (citing *Westinghouse*). The Riverkeeper does not even cite this additional burden of persuasion, much less endeavor to meet it.

The Riverkeeper has therefore failed to meet its burden of establishing all four elements required for intervention as of right. Its request is untimely, it does not have a significant interest in this matter, any alleged interest will not be practically impaired, and government entities are already adequately representing the alleged interests and people that the Riverkeeper thinks it must protect. As such, the Riverkeeper's request to intervene as of right should be denied.

## II.    The Riverkeeper should be denied permissive intervention.

The Riverkeeper's request for permissive intervention should also be denied as it will unduly delay and prejudice the existing parties. On timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. Rule 24(b), Fed. R. Civ. P. "District Courts are vested with substantial discretion to deny permissive intervention where inappropriate[.]" *Shaw v. Hunt*, 154 F.3d 161, 168 (4th Cir. 1998). In exercising this discretion, "the court must consider whether the intervention will unduly delay or prejudice the rights of the original parties." Fed. R. Civ. P.24(b)(3). Among the factors a court should consider in determining whether to allow permissive intervention are (1) the timeliness of the motion; (2) the presence of a common question of law or fact; and (3) whether the intervention will unduly delay or prejudice the original parties. *Savannah Riverkeeper v. U.S. Army Corps of*

*Eng'rs*, No. CV 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012). "Based on these three factors, a court can deny a motion for permissive intervention – even if there is a common question of law or fact – if intervention would cause undue delay, complexity, or confusion in a case." *Stellar IT Solutions, Inc. v. United States Citizenship and Immigration Services*, No. CV 18-2015(RC), 2019 WL 3430746, at * 3 (D.D.C. July 30, 2019). And a court in this district has previously denied permissive intervention for these very reasons. *See, State of South Carolina v. United States*, No. CV 1:16-00391-JMC, 2016 WL 2996644, at *5 (D.S.C. May 25, 2016) (denying permissive intervention where a private non-profit's inclusion in the suit would "complicate the litigation, potentially unduly delay the adjudication of the case on the merits, and generate little, if any, corresponding benefit to the existing parties.").

Like the proposed intervenor in *State of South Carolina v. United States*, the Riverkeeper's inclusion in this case will cause unnecessary delay, complicate this litigation, and increase costs without any corresponding benefit. For the reasons discussed above, the Riverkeeper's motion is untimely and allowing it to intervene at this time will unduly delay and prejudice the original parties. As explained in § I.A, *supra*, the Riverkeeper's motion is untimely because it comes several months after this action was initiated (despite contemporaneous knowledge of the suit) and in the midst of the parties' briefing of the substantive matters in this case. The Riverkeeper's presence will also complicate the litigation, as the Riverkeeper is attempting to position itself as a plaintiff despite having interests substantially similar to the Defendants. In addition, the Riverkeeper's inclusion in this case will not create any benefit to the parties or the court. The Riverkeeper does not have any expertise in construction of fish passages or rock weirs and does not represent any interests that are not already represented. However, inclusion of the Riverkeeper would mean the additional filing of initial and responsive pleadings and would certainly delay this

Court's consideration of the substantive motions presently before it. All of this will add to the parties' costs, which will be borne by South Carolina and Georgia taxpayers. Further, the Riverkeeper has requested attorneys' fees and expenses in its proposed complaint. Dkt.#38-2 at 9. This too will add to the taxpayers' costs. And the taxpayers will bear these costs despite the minimal benefit that will come from the addition of the Riverkeeper in this matter.

South Carolina will also be prejudiced by the Riverkeeper's inclusion in this case. The Riverkeeper has taken the position that the current plaintiffs may be open to settling this matter on terms different than what it would accept. Dkt.#38 at 10. As discussed in § III, *infra*, the Riverkeeper's alleged interests are much more closely aligned to the current Defendants than the Plaintiffs in this matter. Requiring the Plaintiffs, who are arguing that the WIIN Act requires that the pool elevation be maintained, to litigate (or negotiate) alongside a party that had a key role in shaping the events leading to the current uncertainty and who has taken the Defendants' position on this key matter in the litigation, Ex. 4, Bonitatibus interview at 17, would unduly prejudice them in their attempts to settle this matter, not to mention their ability to successfully make their cases before this Court. In short, the interests of the Plaintiffs do not align with the Riverkeeper, and its inclusion as a plaintiff in this matter and in the ongoing settlement negotiations will unduly prejudice South Carolina. Because the Riverkeeper's motion is untimely, will unnecessarily complicate this matter, will increase costs, and would result in undue prejudice to the Plaintiffs without any corresponding benefit to the litigation, this Court should deny its request for permission to intervene.

## III.     If allowed to intervene, the Riverkeeper should be designated a defendant.

If the Court is inclined to allow the Riverkeeper to intervene in this matter, it should be designated a defendant because its public positions, advocacy and interests are adverse to the

interests of the Plaintiffs and are aligned with the existing Defendants. In considering the alignment of the parties after intervention, the position of an intervenor, whether as plaintiff or defendant, is not a matter of label or form but rather of substance and may be determined by analysis of the proceedings in the case. 59 Am. Jur. 2d Parties § 224 (citing *Jack Wood Const. Co., Inc. v. Ford*, 258 Ark. 47, 522 S.W.2d 408 (1975); *Allman v. Potts*, 140 Mont. 312, 371 P.2d 11, 92 A.L.R.2d 1104 (1962) (stating that court was not bound by intervenor's complaint that was entitled "plaintiff in intervention")). Here, the substance of the Riverkeeper's positions and alleged interests establish that this Court should ignore its self-designation as a plaintiff intervenor and only allow it to intervene as a defendant in this matter.

In its request to intervene, the Riverkeeper states that it and "other stakeholders" presented the idea for the WIIN Act to federal lawmakers. Dkt.#38 at 3. What the Riverkeeper intentionally omits is that these "other stakeholders" were the Defendants in this matter – both the Corps as well as GPA. Ex. 3, Bonitatibus July 12, 2016 email; Ex. 5, McCurry August 12, 2016 email; Ex. 6, Bonitatibus August 29, 2016 email; Ex. 7, Bonitatibus Draft Letter; Ex. 8, NSBLD Dam Replacement Request; and Ex. 9, Moorer November 17, 2016 email. The Riverkeeper asserts that because it "played an important role in advocating" for inclusion of the pertinent language of the WIIN Act, it has sufficient interest in this matter. Dkt.#38 at 8. However, the Riverkeeper has gone on record to state that it subscribes to the Corps' view of the primary issue in this litigation: the interpretation of the WIIN Act that only requires the functionality of the pool be maintained, not its depth. The Riverkeeper also agrees with the Corps' decision to remove the dam, does not support maintaining the dam and creating a fish bypass (as approved in the SHEP mitigation package adopted as a part of the Settlement Agreement), and supports construction of a rock weir

that significantly lowers the pool level.  Ex. 4, Bonitatibus interview at 3-6, 15, 17, 38-39, 41; Ex. 10, Blue Heron Blog May 19, 2017.

As to the interpretation of the WIIN Act, the Riverkeeper has stated, "[i]t's very clear. When you read it, it says uses of the pool." Ex. 4, Bonitatibus interview at 17. Given that the Riverkeeper advocated for the WIIN Act alongside the Corps and GPA and that its position on the NSBLD project is similar to that taken by the Federal Defendants, it is clear that the Riverkeeper's interests are substantively more in line with the Federal Defendants and GPA than with any of the plaintiffs in this matter.

The Riverkeeper has also long supported demolition of the NSBLD and has opposed the riverfront development that South Carolina and Augusta seek to protect. In a May 9, 2000, Augusta Chronicle guest column, Frank Carl, the original Savannah Riverkeeper and current chairman of the board, stated that "[d]evelopment along the river is the problem, not the solution," in response to U.S. Rep. Charlie Norwood's introduction of federal legislation to repair and maintain the NSBLD. Ex. 11, *Editorial: Riverkeeper Doesn't Fit in this Suit*, The Augusta Chronicle, Feb. 22, 2020. In 2008, Mr. Carl was quoted as stating that "[w]e haven't pushed it, but we would like to see it taken out." Ex. 12, Rob Pavey, *Removal of Local Dam Debated*, Do Savannah, May 25, 2008. He also supported getting rid of the pool altogether. In his comments for the article, Mr. Carl further stated that eliminating the weed-choked pool downtown would improve water quality and aesthetics. *Id.* In arguing that there are only two options for the NSBLD, repair or replace, Mr. Carl has most recently stated that, "[b]y now it should be clear, replacing the failing dam is the option that we need to move forward with diligently." Ex. 13, Frank Carl, Opinion: 2 Options for the New Savannah Bluff Lock & Dam.

Further, the current Riverkeeper, Tonya Bonitatibus, has gone so far as to state that the people opposed to removal of the NSBLD are doing "a good job of promoting hysteria." Ex. 14, Bill Bengston, *Future of lock and dam remains murky*, North Augusta Star, January 13, 2017. The Riverkeeper has made it clear that it is not interested in protecting Augusta's and North Augusta's riverfront development – one of the Plaintiffs' key interests in this matter. As such, if allowed to intervene, it should only be as a defendant.

Like GPA, the Riverkeeper also has a significant interest in seeing that the SHEP inner harbor dredging proceed without any delays, and prior to commencement of construction of the fish passage as required by the Settlement Agreement and State permits. This is so based on the fact that the Riverkeeper is part of the Savannah River Restoration Board, which is entitled to approximately Twelve Million Five Hundred Thousand Dollars ($12,500,000) from GPA upon completion of inner harbor dredging. Dkt.#1-8, § II.B.4. GPA only began making payments to the designated escrow account at the initiation of inner harbor dredging, and the funds will not be turned over to the Board until inner harbor dredging is complete. *Id.* While the Riverkeeper is only one part of this board, it has a significantly larger stake in that it is the sponsor of the Corps' Savannah River Below Augusta Ecosystem Restoration Project. Ex. 15, Approval of Review Plan for the Savannah River Below Augusta Restore Ecosystem Study, Georgia. Further, the Riverkeeper has solicited funds from several municipalities in Georgia to fund this project, in part based on its promise that the settlement money will be available to fund its project after inner harbor dredging is completed. Ex. 16, Georgia's 2018 Clean Water Heroes; Ex. 17, Bonitatibus May 29, 2018 letter; Ex. 18, Memorandum of Understanding between Columbia County, Evans, Georgia and Savannah Riverkeeper, Augusta, Georgia; and Ex. 19, Memorandum of Agreement between City of Savannah, Georgia and Savannah Riverkeeper, Augusta, Georgia. Given the

Riverkeeper's substantial stake in the Savannah River Below Augusta project and the importance of the expeditious completion of inner harbor dredging to this project, the Riverkeeper's interests lie with the Defendants in this matter.

The Riverkeeper has worked alongside the Federal Defendants and GPA from the birth of the WIIN Act throughout the Corps' decision-making process for the NSBLD Project, it has adopted the Corps' interpretation of the WIIN Act, and it has an interest in seeing that inner harbor dredging is completed as fast as possible, regardless of the impacts on the communities and individuals it supposedly represents. It is clear that the Riverkeeper's interests in this case, however minimal, are more closely aligned to the Defendants' interests. As such, should this Court be inclined to permit its intervention in this matter, South Carolina respectfully requests that the Court designate the Riverkeeper as a defendant.

## CONCLUSION

For the foregoing reasons, South Carolina respectfully requests that the Court deny the Riverkeeper's Motion to Intervene. Further, if this Court is inclined to allow intervention, South Carolina respectfully requests that it be required to intervene as a defendant.

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

Alan Wilson, Fed. Bar No. 10457
Robert D. Cook, Fed. Bar No. 285
T. Parkin Hunter, Fed. Bar No. 2018
**ATTORNEY GENERAL FOR
THE STATE OF SOUTH CAROLINA**
Post Office Box 11549
Columbia, South Carolina 29211-1549
agwilson@scag.gov
agrcook@scag.gov
phunter@scag.gov
(803) 734-3970

s/Chad N. Johnston
Randolph R. Lowell, Fed. Bar No. 9203
Chad N. Johnston, Fed. Bar No. 10813
**WILLOUGHBY & HOEFER, PA**
133 River Landing Drive, Suite 200
Charleston, South Carolina 29492
rlowell@willoughbyhoefer.com
cjohnston@willoughbyhoefer.com
(843) 619-4426

*Attorneys for the State of South Carolina, Savannah
River Maritime Commission, and South Carolina
Department of Health and Environmental Control*

Stephen P. Hightower, Fed. Bar No. 9591
**SOUTH CAROLINA DEPARTMENT OF
HEALTH AND ENVIRONMENTAL
CONTROL**
2600 Bull Street
Columbia, South Carolina 29201
hightosp@dhec.sc.gov
(803) 898-3350

*Attorney for South Carolina Department of Health
and Environmental Control*

March 6, 2020
Columbia, South Carolina