**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| STATE OF SOUTH CAROLINA, )<br>SOUTH CAROLINA DEPARTMENT OF )<br>HEALTH AND )<br>ENVIRONMENTAL CONTROL, )<br>SAVANNAH RIVER MARITIME )<br>COMMISSION, and )<br>AUGUSTA, GEORGIA, )<br>        )<br>      Plaintiffs, )<br>        )<br>        )<br>   v. )<br>        )<br>UNITED STATES ARMY CORPS OF )<br>ENGINEERS, )<br>UNITED STATES ARMY CORPS OF )<br>ENGINEERS, SAVANNAH DISTRICT, )<br>RYAN MCCARTHY, in his official )<br>capacity as Secretary of the Army, )<br>LT. GENERAL TODD T. SEMONITE, )<br>in his official capacity as )<br>Commanding General and Chief )<br>of Engineers, U.S. Army Corps of Engineers, )<br>MAJOR GENERAL DIANA M. HOLLAND, )<br>in her official capacity as Commanding )<br>General, South Atlantic Division, )<br>U.S. Army Corps of Engineers, )<br>COLONEL DANIEL H. HIBNER, in his )<br>official capacity as District Engineer, )<br>U.S. Army Corps of Engineers, )<br>Savannah District, and )<br>GEORGIA PORTS AUTHORITY, )<br>        )<br>      Defendants. )<br>        ) | C/A No. 1:19-cv-03132-RMG |

1

## PLAINTIFF AUGUSTA, GEORGIA'S RESPONSE TO FEDERAL DEFENDANTS' MOTION TO DISMISS

In accordance with Fed. R. Civ. P. 7, Plaintiff Augusta, Georgia files this reply and Memorandum of Law in Opposition to the Federal Defendants' Motion to Dismiss Augusta's Complaint in Intervention Entry # 56 ("Fed. Ds' Mot.").

## I.    INTRODUCTION AND SUMMARY

Augusta has brought this action to set aside Federal Defendant's October 2019 Action ("Oct. 2019 PAAR/SEA/FONSI")[1] which will remove the New Savannah Bluff Lock & Dam ("NSBLD") which has been in place since 1937 providing a seventeen mile stretch of river through Augusta critical for Augusta's economic health and future, water supply,  parks, aquatic habitat, fish and wildlife, conservation, floodplains, wetlands, socioeconomic resource, recreation, navigation, historic resources, aesthetics and quality of life.

Federal Defendants conflate two separate actions – the Federal Defendants $ 750 million action embodied in its April 2012 Final Environmental Impact Statement and Final General

---

[1] As set forth in the Complaint, the action challenged by Augusta is the U.S. Army Corps of Engineers final adoption of the Savannah Harbor Expansion Project Georgia and South Carolina: Fish Passage at New Savannah Bluff Lock Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment (August Comp., Doc. # 23, Exhibit A, SEA), U.S. Army Corps of Eng'rs Mem., Maj. General Holland, Approval of Final Report, Savannah Harbor Expansion Project (SHEP), Georgia and South Carolina: Fish Passage at New Savannah Bluff Lock and Dam (NSBLD) Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment (EA), dated Oct. 29, 2019 (August Comp., Doc. # 23, Exhibit B, Approval Memo), and Finding of No Significant Impact, Savannah Harbor Expansion Project Fish Passage at New Savannah Bluff Lock and Dam Richmond County, Georgia and Aiken County, South Carolina, dated Oct. 29, 2019 (August Comp., Doc. # 23, Exhibit C, FONSI), and all actions set forth in the October 31, 2019 Notice of Availability of the Final Integrated Post Authorization Analysis Report (PAAR) and Supplemental Environmental Assessment (SEA), Fish Passage at New Savannah Bluff Lock and Dam (NSBLD), and Finding of No Significant Impact (FONSI) that evaluated proposed changes to the Fish Passage feature of the Savannah Harbor Expansion Project (SHEP)(collectively "Oct. 2019 PAAR/SEA/FONSI").  See Augusta Compl., Doc. # 23.

2

Reevaluation Report (FEIS) regarding the separate Savannah Harbor Expansion Project ("2012 SHEP FEIS") and the Federal Defendants October 2019 determination to remove the NSBLD 180 miles upstream embodied in Federal Defendants' Oct. 2019 PAAR/SEA/FONSI.  Augusta has specifically alleged and plead the Federal Defendants' Oct. 2019 PAAR/SEA/FONSI is _separate_ from the 2012 SHEP FEIS and this allegation must be accepted under Iqbal and Twombly.

Augusta's has sought relief from the Court as follows:

**Count I Declaratory Judgment WIIN Act**: Federal Defendant's Oct. 2019 PAAR/SEA/FONSI[2] violates the Water Infrastructure Improvements for the Nation Act ("WIIN Act"), Public Law 114-322, 130 Stat. 1703 (Dec. 16, 2016). The WIIN Act deauthorizes the NSBLD and requires Federal Defendants to 'maintain the pool' of water in the seventeen mile stretch of the Savannah River upstream of the NSBLD as 'in existence on the date of enactment.'[3]  Federal Defendants' Oct. 2019 PAAR/SEA/FONSI will reduce the pool elevation

---

[2] As set forth in the Complaint, the action challenged by Augusta is the U.S. Army Corps of Engineers final adoption of the Savannah Harbor Expansion Project Georgia and South Carolina: Fish Passage at New Savannah Bluff Lock Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment (August Comp., Doc. # 23, Exhibit A, SEA), U.S. Army Corps of Eng'rs Mem., Maj. General Holland, Approval of Final Report, Savannah Harbor Expansion Project (SHEP), Georgia and South Carolina: Fish Passage at New Savannah Bluff Lock and Dam (NSBLD) Integrated Post Authorization Analysis Report and Supplemental Environmental Assessment (EA), dated Oct. 29, 2019 (August Comp., Doc. # 23, Exhibit B, Approval Memo), and Finding of No Significant Impact, Savannah Harbor Expansion Project Fish Passage at New Savannah Bluff Lock and Dam Richmond County, Georgia and Aiken County, South Carolina, dated Oct. 29, 2019 (August Comp., Doc. # 23, Exhibit C, FONSI), and all actions set forth in the October 31, 2019 Notice of Availability of the Final Integrated Post Authorization Analysis Report (PAAR) and Supplemental Environmental Assessment (SEA), Fish Passage at New Savannah Bluff Lock and Dam (NSBLD), and Finding of No Significant Impact (FONSI) that evaluated proposed changes to the Fish Passage feature of the Savannah Harbor Expansion Project (SHEP)(collectively "Oct. 2019 PAAR/SEA/FONSI").  See Augusta Compl., Doc. # 23.
[3] The WIIN Act reads in relevant part:
(c)  Project modifications.

3

by up to 5.5 feet: damaging shorelines and causing permanent adverse effects to Augusta and its citizens Doc. # 23, Augusta Compl. ¶¶ 28, 71, 149, 165, *in passim;* **Exhibit A, Affidavit of Tom Robertson, P.E. ;**[4] Doc. # 23, Augusta's Compl. at ¶¶ 14-31, 127-133):




This photo taken Feb. 13, shows the river levels near River North in North Augusta during the Savannah River drawdo

---

    **(1)** In general. Notwithstanding any other provision of law, the Project is modified to include, as the Secretary determines to be necessary--
    **(A)(i)** repair of the lock wall of the New Savannah Bluff Lock and Dam and modification of the structure such that the structure is able--
        **(I)** *to maintain the pool for navigation, water supply, and recreational activities, as in existence on the date of enactment of this Act;* and
        **(II)** to allow safe passage over the structure to historic spawning grounds of shortnose sturgeon, Atlantic sturgeon, and other migratory fish; **or**
    **(ii)** construction at an appropriate location across the Savannah River of a structure that is able *to maintain the pool for water supply and recreational activities, as in existence on the date of enactment of this Act;*
Sec. 1319(c), Project Modifications, Public Law 114-322, 130 Stat. 1703 (Dec. 16, 2016)(emphasis added).
[4] Under standards for a Motion to Dismiss Plaintiffs may rely on allegations in the pleadings. However, the Federal Defendants have challenged Augusta's standings and accordingly supplemental affidavits have been provided to the Court.

***Figures 1 & 2: Water level reductions of as much as three to five feet several miles upstream of the NSBLD during February 8-15, 2019 Federal Defendant's Drawdown[5] (Aiken Standard); Doc. # 23, Augusta Compl, ¶¶ 130-132.***

Federal Defendants' own consultants state in their peer review of Federal Defendant's action "None of the alternatives seem to fully satisfy this requirement [of the WIIN Act] since they all appear to have a direct impact by lowering the normal pool elevation below the existing conditions." Doc. # 23, Augusta Compl. ¶ 165.[6]

Federal Defendants move to dismiss Count I claiming Augusta has not plead any statute waiving sovereign immunity. Doc. # 56, Fed. Ds' Mot. at P. 7. However, Federal Defendants admit repeatedly that the Federal Administrative Procedures Act, U.S.C. §§ 701 *et seq.*("APA*"*) waives sovereign immunity (Doc. # 56, P. 8, 9 and cases cited therein). The APA is cited in Augusta's Complaint no less than six times including in the very first sentence in the Complaint and very first sentence in the Complaint's jurisdictional provision and throughout. Doc. # 23, Augusta Compl, at p. 1, ¶¶ 12, 34, 36, 53, 106. Federal Defendants argue unconvincingly that the WIIN Act is committed to agency discretion. The WIIN limits Federal Defendants to two options, both of which require Federal Defendants maintain the pool elevation as of the date of enactment of the WIIN Act.

**Count II Declaratory Judgment Clean Water Act Section 401:** Federal Defendants have not obtained a Section 401 water quality certification under Clean Water Act, 33 U.S.C. §§

---

[5] Figure 1 credit Aiken Standard, https://www.aikenstandard.com/news/csra-officials-react-to-savannahriver-drawdown/article_af000200-3475-11e9-862f-07dbd8405628.html.

[6] Final Independent External Peer Review Report Savannah Harbor Expansion Project Georgia and South Carolina, Fish Passage at New Savannah Bluff Lock & Dam Integrated Post-Authorization Analysis Report and Environmental Assessment, Battelle Memorial Institute (May 16, 2019), Prepared for Department of Army Contract No. W912HQ-15-D-0001 ("2019 Battelle Peer Report")(attached as Exhibit Q to Doc. # 23, Augusta's Compl.)

1251 et seq. ("CWA"), Section 1341 from the State of Georgia for the Federal Defendants' Oct. 2019 PAAR/SEA/FONSI, and have rejected the "Off-Channel Rock Ramp" specified in the Section 401 water quality certification from South Carolina incorporated into the Settlement Agreement and an order from this Court on May 29, 2013 Order (CIV 1:19-cv-03132-RMG, Doc. # 90). Doc. # 23, Augusta Compl. ¶¶ 89-100, *in passim;* **Exhibit A, Affidavit of Tom Wiedmeier, PE, Director, Augusta Utilities, at Attachment A, Settlement Agreement.** [7]

Federal Defendants admit that the United States waived sovereign immunity under the CWA Section 313 but argue that because the 2012 Savannah Harbor Expansion Project (SHEP) over 180 miles away from the NSBLD relates to navigation, the CWA waiver of sovereign immunity does not apply. Federal Defendants' Oct. 2019 PAAR/SEA/FONSI action. Despite Augusta's Complaint pleading them as separate actions, Federal Defendants assert that Federal Defendants' Oct. 2019 PAAR/SEA/FONSI action and 2012 SHEP FEIS action are the same action. Federal Defendants make this argument despite the fact that the 2012 SHEP FEIS states four times that the removing the NSBLD is infeasible,[8] whereas Federal Defendants' Oct. 2019 PAAR/SEA/FONSI action will remove the NSBLD.

Federal Defendants argue Augusta should have appealed the 2011 Georgia and 2013 South Carolina CWA Section 401 certifications – which must be filed within 30 days and 15

---

[7] Under standards for a Motion to Dismiss Plaintiffs may rely on allegations in the pleadings. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). However, the Federal Defendants have challenged Augusta's standings and accordingly supplemental affidavits have been provided to the Court.

[8] See **Exhibit B, April 2012 Final Environmental Impact Statement and Final General Reevaluation Report (FEIS) at Ch. 5, p. 5-115; FEIS, App. B, Biological Assessment of Threatened and Endangered Species (Jan. 2012), at p. 173-174; FEIS App. C, Mitigation Planning (Jan. 2012), at 65; FEIS, App. L, Cumulative Impacts Analysis (Jan. 2012) at 95.**

days respectively from date of issuance - even though the Federal Defendants decision to remove the NSBLD did not take place until years later in 2019.

Federal Defendants also argue that Augusta should have filed a CWA citizen suit rather than seek a Declaratory Judgement in this matter to obtain relief. The CWA requires a defendant to be 'in violation' and does not permit citizen suit prior to the actual discharge, so a citizen suit could not be filed by Augusta regarding the NSBLD until Federal Defendants commenced removing the dam and discharged pollutants without the CWA 401 water quality certification.

**Count III Declaratory Relief As to the Settlement Agreement, Order and WIIN Act**: Augusta requests declaratory judgment and permanent injunction to require Defendants to comply with the May 29, 2013 Order and Settlement Agreement. The Settlement Agreement requires party Georgia Port Authority to assist Augusta regarding flows relating to Augusta's Diversion Dam, which is just upstream of the NSBLD, and references Augusta repeatedly. Federal Defendants argue that Augusta lacks standing as to Count 3. Federal Defendants have not challenged South Carolina's standing as to Count 3 and accordingly under the longstanding one-plaintiff rule, Courts are not permitted to dismiss a plaintiff where another plaintiff has invoked subject matter jurisdiction of the Court.

By calling for removal of the NSBLD, the Federal Defendant's Oct. 2019 PAAR/SEA/FONSI violates this Court's May 29, 2013 Order incorporating the May 22, 2013 Settlement Agreement in CIV 1:19-cv-03132-RMG, Doc. # 90, in which Federal Defendants committed to leaving the New Savannah Bluff Lock & Dam (NSBLD) in place as it has been since 1937. Doc. # 23, Augusta Compl. ¶¶ 89-100, *in passim;* **Exhibit A, Affidavit of Tom Wiedmeier, PE, Director, Augusta Utilities, at Attachment A, Settlement Agreement.** The Federal Defendant's Oct. 2019 PAAR/SEA/FONSI also violates the Federal Defendant's April

7

2012 Final Environmental Impact Statement and Final General Reevaluation Report (FEIS) regarding the separate Savannah Harbor Expansion Project ("2012 SHEP FEIS") and final decision to construct an "Off-Channel Rock Ramp" at the NSBLD.

Six years after the 2012 SHEP EIS action, Federal Defendants changed position and determined removal of the NSBLD is feasible. Federal Defendants did not inform this Court which retained jurisdiction specifically to ensure fidelity to the Settlement Agreement, and suddenly determined that the best alternative was to remove the NSBLD. The decision was so sudden that the Federal Defendants issued its Draft Report recommending removal of the NSBLD the very next day – February 16, 2019 – following the Federal Defendants' February 2019 Field Test showing that the elevation of the pool upstream of the NSBLD upon removal would be 3.0 feet below the Corps predicted elevation. **Ex. A, Robertson Aff., at ¶ 17.**

Misunderstanding August's Complaint, Count 3, Federal Defendants raise a new argument that Augusta lacks standing even though for the same Count 3 Federal Defendants do not argue that South Carolina lacks standing. With one party with standing – under the One-Plaintiff rule – Federal Defendants' motion is improper and there is no need for the court to rule on Augusta's standing because three South Carolina parties have asserted the same claim in Count 3.

Federal Defendants repeat largely verbatim arguments in Federal Defendants Motion to Dismiss and Response to Partial Motion for Summary Judgment. Doc. # 36. Both South Carolina (Doc. # 48) and Augusta (Doc. # 46) responded and those responses are incorporated by reference.

## II.    <u>STANDARD OF REVIEW</u>

In considering a motion to dismiss under Fed. R. Civ. P. 12(b), a court must accept as true all allegations in the complaint and all reasonable inferences that may be drawn therefrom, viewed in the light most favorable to the plaintiff, *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 *(4th Cir. 2001); Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). The claims may only be dismissed based on Rule 12(b) if plaintiffs cannot demonstrate any set of facts that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The burden is on the moving party to show that no claim has been stated. *See Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).

Augusta has satisfied its burden of establishing a waiver of sovereign immunity by the Federal Defendants and jurisdiction of this Court, putting the Federal Defendants on clear notice of the claims asserted against it and invoking the sovereign immunity waivers found in the CWA, APA as well as the National Environmental Policy Act (NEPA), 42 U.S.C.A. §§ 4321. Doc. # 23, Augusta Compl, at p. 1, ¶¶ 12, 34, 36, 53, 106.  Augusta's Complaint must be accepted as true and need only contain sufficient factual matter to "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citation omitted).  Where the complaint provides a reasonable inference that the defendant is liable for the misconduct alleged, a Motion to dismiss under FRCP 12 must be denied.  *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (quoting Twombley, 55 U.S. at 557). A well-pleaded complaint may

9

proceed even if it appears "that a recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The United States has Waived Sovereign Immunity Regarding the Claims in the Complaint

#### 1.    The APA Explicitly Waives Sovereign Immunity

Federal Defendants argue that the Court does not have jurisdiction over Claims 1 and 2, stating erroneously that the claims are not brought under the Federal Administrative Procedures Act.  Federal Defendants state "Augusta did not plead these claims as APA claims." Doc. # 56, Fed. Ds' Mot. at P. 7  Doc. # 56, Fed. Ds' Mot. at P. 7.  However, Federal Defendants admit repeatedly that the Federal Administrative Procedures Act, U.S.C. §§ 701 *et seq.*("APA*"*) waives sovereign immunity (Doc. # 56, P. 8, 9 and cases cited therein).  The APA is cited in Augusta's Complaint no less than six times including in the very first sentence in the Complaint and very first sentence in the Complaint's jurisdictional provision and throughout.  Doc. # 23, Augusta Compl, at p. 1, ¶¶ 12, 34, 36, 53, 106.

Augusta has already briefed why the narrow 'committed to agency discretion' exception to the waiver of sovereign immunity in the APA does not apply here.  Doc. # 46, Augusta Response to United States Motion to Dismiss, at III.A.1.  In summary, Congress amended the APA in 1976 to eliminate the defense of sovereign immunity where plaintiffs seek other than money damages.  *Bowen v. Massachusetts*, 487 U.S. 879, 891(1988); 5 U.S.C. § 702; *United States v. Mitchell*, 463 U.S. 206 (1983); *South Carolina v. United States*, 221 F. Supp. 3d 684 (D.S.C. 2016).  Augusta seeks no money damages.

The legal inquiry is whether there is law to apply. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). The presumption is broadly *in favor of judicial review. Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *Citizens,* 401 U.S. 402 (1971). The exception for actions committed to agency discretion is very narrow and considered 'rare.' *Overton Park*, 401 U.S. at 410; see also *Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *DOC v. New York*, __ U.S. ___, 139 S.Ct. 2551, 2568 (2019). The question is whether the WIIN Act contains "judicially manageable standards . . . for judging how and when an agency should exercise its discretion[.]" *Heckler v. Chaney*, 470 U.S. at 830.

To resolve whether the WIIN Act commits action to Federal Agency discretion, the following language must be interpreted:

> (c)  Project modifications.
>   (1)  In general. Notwithstanding any other provision of law, the Project is modified to include, as the Secretary determines to be necessary--
>   (A)(i)  repair of the lock wall of the New Savannah Bluff Lock and Dam and modification of the structure such that the structure is able--
>       (I)  ***to maintain the pool for navigation, water supply, and recreational activities, as in existence on the date of enactment of this Act;*** and
>       (II)  to allow safe passage over the structure to historic spawning grounds of shortnose sturgeon, Atlantic sturgeon, and other migratory fish; **or**
>   (ii)  construction at an appropriate location across the Savannah River of a structure that is able ***to maintain the pool for water supply and recreational activities, as in existence on the date of enactment of this Act;***

Sec. 1319(c), Project Modifications, Public Law 114-322, 130 Stat. 1703 (Dec. 16, 2016)(emphasis added).

Federal Defendants argue that this provision "commits implementation of the fish passage to the Corps' discretion and expertise, and lacks standards that the Court could meaningfully use in evaluating its decision, it is not reviewable under the APA" Fed. D's Mot., at 10. The text of

Sec. 1319(c) does not support Federal Defendants' position.  Federal Defendants have no

discretion. Federal Defendants must maintain the pool and either repair the lock wall of the

NSBLD, or construct a structure across the Savannah River.

In applying the law, the Court will determine whether or not the WIIN Act language can be

interpreted so as to lower the pool as much as 5.5 feet as Federal Defendants have determined.

Federal Defendants admit the legal question, arguing that Congress had no way of knowing the

'date of enactment' when it drafted the WIIN Act (Fed. Ds' Mot., note 12) and arguing regarding

its own internal memoranda and letters Augusta has provided from Congressional representatives

interpreting the WIIN Act. Fed. Ds' Mot., at II.B.2.a., p. 25-27.  Thus, there is law to apply and

the 'committed to agency exception' to APA waiver of sovereign immunity does not apply.[9]

Augusta provided numerous citations to case law precedent supporting the legal position that

there is law to apply in the WIIN Act and its provisions do not commit action to Federal

Defendants' discretion.  *Raymond Proffitt Found. v. United States Army Corps of Eng'rs*, 343

F.3d 199 (3d. Cir. 2003), is instructive and on point in that the Third Circuit Court of Appeals

applied the discretionary exception in the APA to a provision of the Water Resources

Development Act, of which WIIN 2016 is a part or amendment.  The Third Circuit concluded

that Section 2316 was *not* committed to the Corps' discretion and there was law to apply,

---

[9] Federal Defendants have undercut their own arguments by submitting eleven pages of legal argument regarding the law applicable to the WIIN Act.  Fed. Ds' Mot. at p.18-29. Federal Defendants are also incorrect in asserting that Section 1319(c)(1)(A)(ii) "commits implementation of the fish passage to the Corps' discretion." Fed. D's Mot., at 10.  Section 1319(c)  Notably, Option 2 – construction of a structure – does not even provide for fish passage. Fish passage is not mentioned.  If Federal Defendants wish the Court to construe whether the fish passage language in 1319(c)(1)(A)(ii) is intended to include fish passage, again there is law to apply.

accordingly sovereign immunity was waived under the APA. *Raymond Provffitt,* 343 at 207.

The specific provision of the WRDA reviewed by the Third Circuit Court of Appeals was quite

broad and non-specific:

> "The Secretary [of the Army] shall include environmental protection as one of the primary
> missions of the Corps of Engineers in planning, designing, constructing, operating, and
> maintaining water resources projects."
> WRDA, § 2316(a).

If the broad "environmental protection" language of WRDA, § 2316(a) does not commit action

to Federal Defendants' discretion, then the much more precise, clear, and limiting language in

the WIIN Act Section 1319(c)(1)(A) clearly can not commit the decision to Federal Defendant's

discretion.  See also *Ohio v. U.S. Army Corps of Engineers*, 259 F.Supp.3d 732, 749 (N.D. Oh.

2017) (33 U.S.C. 426o-2 providing for 'expedite the operation and maintenance' did not commit

action to Federal Defendants discretion).

Augusta respectfully requests that the Court permit adoption and incorporation of South

Carolina's arguments and citations to authority respecting the 'committed to agency discretion'

exception found in Section I.a.i of South Carolina's March 6, 2020 Response to the United States

Motion to Dismiss, Doc. # 48 as if set forth at length.

    **2.**      **The Clean Water Act Waives Federal Defendants' Sovereign
Immunity and Federal Defendants are Required to Comply with
Section 401 of the Clean Water Act**

Augusta has already briefed the waiver of sovereign immunity in Section 313 of the CWA

and its applicability to Count 2. Doc. # 46, Augusta Response to United States Motion to

Dismiss, at III.A.2.; **Ex. B, Wiedmeier Aff. at ¶¶ 7, 11, 12, 20.**[10]

---

[10] Augusta respectfully requests that the Court permit adoption and incorporation of South
Carolina's arguments and citations to authority respecting the CWA Section 313 waiver to

In summary, Federal Defendants admit CWA Section 313 waives sovereign immunity (Fed. Ds' Mot. at p. 5-7) but raises two defenses: (1) that Augusta's claim must be brought by citizen suit under CWA Section 505 and (2) that the navigation involved in the SHEP, 180 miles downstream, somehow precludes judicial review of the removal of the NSBLD which has no navigation function whatsoever following deauthorization in 2016 under the WIIN Act.

Section 313 of the CWA provides that the Federal Defendants are subject to the requirements of the CWA – substantive and procedural – in the same manner as any other entity subject to the CWA:

> (a) Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges.

CWA ¶ 313(a), 33 U.S.C. § 1323.

Section 313 further states the waiver "shall apply (A) to any requirement whether substantive or procedural . . . (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner."

CWA ¶ 313(a), 33 U.S.C. § 1323.

Federal Defendants have not identified a single case to support its contention that Augusta can only pursue relief under the citizen suit provision of the CWA, and has found no case where this was done. Indeed, in *Nat'l Wildlife Federation v. U.S. Army Corps of Engineers*,

---

sovereign immunity found in Section I.a.iv of South Carolina's March 6, 2020 Response to the United States Motion to Dismiss, Doc. # 48, p. 20-35.

384 F.3d 1163 (9th Cir. 2004), the 9th Circuit permitted a CWA and APA suit against the Corps

under the sovereign immunity waiver in 33 U.S.C. § 1323 without requiring assertion of the

CWA citizen suit provision.  Federal cases are replete with examples of cases brought against

federal defendants using the CWA and APA, and not invoking the citizen suit provision in CWA

Section 505, under the waiver of sovereign immunity in CWA Section 313.[11]

**a.**    **The CWA Does Not Limit Augusta to a Citizen Suit, Which Would be Improper Under These Facts**

Federal Defendants claim that the proper vehicle to pursue Augusta's claims is the citizen

suit provision of the Clean Water Act, 33 U.S.C. § 1365. Fed. Ds' Mot. at P. 13.   Federal

Defendants are incorrect because a citizen suit under Section 1365 cannot be brought until a

discharge occurs, and CWA Section 510, 33 U.S.C.A. § 1370 preserves and reserves to political

subdivisions such as Augusta judicial review under the CWA.

---

[11] *See National Wildlife Federation v. United States Army Corps of Engineers,* 132 F. Supp 2d 876, 878 (D. Or. 2001); *Pac. Rivers v. United States BLM*, 2018 U.S. Dist. LEXIS 222981 (D. Or. 2018); *Cent. Or. Landwatch v. Connaughton*, 2014 U.S. Dist. LEXIS 168683 (D. Or.2014). *See also Appalachian Voices v. State Water Control Bd*., 912 F.3d 746 (4th Cir. 2019)("if a state agency's Section 401 certification is found to be arbitrary and capricious, the Court must vacate the certification, *citing* APA, 5 U.S.C. § 706); *Sierra Club v. State Water Control Board*, 898 F.3d. 383 (4th Cir. 2018)(petition for review of Virginia 401 water quality certification); *Del. Riverkeeper Network v. Sec'y Pa. Dep't of Envtl. Prot*., 833 F.3d 360 (3d. Cir. 2016)( a Water Quality Certification is not merely required by federal law: it cannot *exist* without federal law, and is an integral element in the regulatory scheme established by the Clean Water Act); *Ohio v. U.S. Army Corps of Engineers*, 259 F.Supp.3d 732 (N.D. Ohio 2017)(the Corps is required by statute to comply with all federal, state, interstate, and local requirements . . . respecting the control and abatement of water pollution, 33 U.S.C. §1323(a), and to comply with both substantive and procedural state or interstate requirements aimed at controlling the discharge of dredged or fill material into navigable waters. . . In addition, agencies are subject to the requirements of the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §1453, *and are required to obtain a certification from the state in which any discharge will originate*. 33 U.S.C. §1341(a)(1))(emphasis added); *Raymond Proffitt Found. v. United States Army Corps of Eng'rs*, 128 F. Supp. 2d 762 (E.D. Pa. 2000), aff'd, 343 F.3d 199 (3d. Cir. 2003).

Defendants do not understand the CWA citizen suit provision. A citizen suit under the CWA is not permitted to commence until there is a discharge resulting from the removal of the NSBLD under the Federal Defendants' October 2019 PAAR/SEA/FONSI, which has not occurred. 33 U.S.C. § 1365; 40 C.F.R. Part 135; see, e.g. *Upper Chattahoochee Riverkeeper Fund v. City of Atlanta*, 986 F. Supp. 1406 (N.D. Ga. 1997); see also *Tex. v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)(A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all). Once a discharge occurs, then a Plaintiff must wait 60 days following issuance of a notice letter to file suit. 33 U.S.C. § 1365; 40 C.F.R. Part 135; *Friends of the Earth v. Gaston Copper Recycling Corp.*, 629 F.3d 387 (4th Cir. 2011). Augusta seeks injunction to halt removal of the NSBLD, which would not be available under the CWA citizen suite provision.

Additionally, the language of CWA Section 505 provides that a citizen may enforce a CWA 401 water quality certification, but does not address this situation where Augusta seeks to require Federal Defendants to obtain a CWA water quality certification. 33 U.S.C. 1365 ("any citizen may commence a civil action . . . against any person including the United States . . . who is alleged **to be in violation** of (A) an effluent standard or limitation under this chapter . . .") *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49 (1987)(federal jurisdiction under Section 505 absent where no violation exist); *Stillwater of Crown Point Homeowner's Ass'n v. Stiglich*, 999 F. Supp. 2d 1111 (N.D. Ind. 2014)(violation of issued 401 water quality certification).

Federal Defendants argue that an email from the State of Georgia satisfies Section 401. Fed. Ds' Mot., at 34. While this is an issue for adjudication during the merits portion of the case, a state's decision regarding Section 401 requirements is not conclusive. See *Alabama Rivers*

16

*Alliance v. FERC*, 325 F.3d 290 (D.C. Cir. 2003)(Federal commission and State environmental agency determination that CWA Section 401 certification not required overturned).  Further, Federal Defendants are relying on a February 16, 2011 CWA Water Quality Certification issued eight years before the Federal Defendants' October 2019 PAAR/SEA/FONSI where it was first determined that the NSBLD would be removed.  *Alabama Rivers Alliance* involved installation of a new turbine, which required a new CWA Section 401 water quality certification due to changes in the flow of water.  *See also S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370 (2006); *PUD No. 1 v. Washington Dep't of Ecology*, 511 U.S. 700 (1994) required a CWA 401 certification for releases from a dam.

      **b.**      <u>**The NSBLD is Deauthorized and has No Navigation Function**</u>

Federal Defendants argue that, under Section 511(a)(2), the waiver of sovereign immunity under the CWA Section 313 does not apply where the action could limit the Federal Defendant's authority to maintain navigation. Fed. D's Mot. at 13.

There are two simple reasons that Federal Defendants' October 2019 PAAR/SEA/FONSI has nothing to do with navigation.  First, the WIIN Act deauthorized the NSBLD:

> **(b)** Deauthorization.
>     **(1)**  In general. Effective beginning on the date of enactment of this Act--
>        **(A)**  the New Savannah Bluff Lock and Dam is deauthorized; and

WIIN Act, Section 1319(b).

Being deauthorized, the NSBLD has no navigation purpose.

Second, Federal Defendants chose Option 2 of the WIIN Act which specifically excludes navigation, stating that the structure must maintain the pool for water supply and recreation, not navigation: "construction at an appropriate location across the Savannah River of a structure that

is able to maintain the pool for water supply and recreational activities, as in existence on the date of enactment of this Act."  WIIN Act, Section 1319(c)(1)(A)(ii).

Augusta's pleadings make clear that the Federal Defendants' October 2019 PAAR/SEA/FONSI is a separate action than the 2012 SHEP FEIS. Doc. # 23, Augusta Compl. at 1st paragraph (describing the SHEP 180 miles away), ¶¶ 85, 207.  Under *Iqbal*  and *Twombly* Plaintiffs pleadings must be accepted on their face, and Federal Defendants attempts to conflate the NSBLD with the SHEP cannot support cause for a dismissal and do not support an exception to the CWA Section 313 wavier of sovereign immunity

### B.    Federal Defendants' Interpretation of the WIIN Act is Contrary to the Plain Language of the Act, an Interpretation Created for Litigation, and Entitled to No Deference

Augusta has already briefed legal issues regarding interpretation of the WIIN Act relating to Count 1 and Fed. Ds' Mot. and respectfully requests that the Court incorporate by reference Augusta's March 6, 2020 response, Doc. # 46, at III.B.  In summary, Federal Defendants' offer an interpretation of the WIIN Act reading out the terms 'maintain the pool' and 'as of the date of enactment' of the WIIN Act.

Federal Defendants argue that their interpretation is entitled to deference.  However, the Supreme Court narrowed the application of agency deference in *Kisor v. Wilkie* explaining that courts must avoid deferring to a "convenient litigating position" or "post hoc rationalizatio[n] advanced" to "defend past agency action against attack." *Kisor v. Wilkie*, ___ U.S. ___, 139 S.Ct. 2400, 2417 (2019).  Because the language of the WIIN Act is clear and ambiguous, and requires that the pool elevation be maintained as of the date of enactment of the WIIN Act.

The WIIN Act provides as follows:

(1) In general. Notwithstanding any other provision of law, the Project is modified to include, as the Secretary determines to be necessary--

(A)(i) repair of the lock wall of the New Savannah Bluff Lock and Dam and modification of the structure such that the structure is able--

(I) *to maintain the pool for navigation, water supply, and recreational activities, as in existence on the date of enactment of this Act;* and

(II) to allow safe passage over the structure to historic spawning grounds of shortnose sturgeon, Atlantic sturgeon, and other migratory fish; **or**

(ii) construction at an appropriate location across the Savannah River of a structure that is able *to maintain the pool for water supply and recreational activities, as in existence on the date of enactment of this Act;*

Sec. 1319(c), Project Modifications, Public Law 114-322, 130 Stat. 1703 (Dec. 16, 2016)(emphasis added).

Because the WIIN Act is not ambiguous, Chevron Step 1 requires that the Court exclude consideration of Federal Defendants interpretation. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)).

In its March 6, 2020 response, Augusta pointed out that Federal Defendants only support for its interpretation that the WIIN Act affords Federal Defendants discretion is two internal memoranda dated May 25, 2017 and August 9, 2017 Memorandum from the Corps South Atlantic Division. Doc. # 37, Ex. 1 and 2. The two memos actually attempt to reconcile a disagreement between the Corps South Atlantic Division (CESAD) and its Savannah District (CESAS) and do not represent persuasive or applicable authority. The Department of Justice's "Prohibition on Improper Guidance Documents," Attorney General of the United States (Nov. 16, 2017) warns against using internal guidance, not promulgated or subject to notice and comment Constitutional due process protections. The Attorney General stated, 'the Department will no longer engage in this practice.' *See also Appalachian Power v. EPA*, 208 F.3d. 1015 (D.C. Cir. 2000)(a Federal government agency may not establish legal interpretation through

19

internal guidance). *See also United States Dept. of Labor v. North Carolina Growers Assoc., Inc.,* 377 F.3d 345, 353–54 (4th Cir.2004), *citing Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944); *see Christensen v. Harris County,* 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L.Ed.2d 621 (2000); *United States v. Mead Corp.,* 533 U.S. 218, 234, 121 S. Ct. 2164, 150 L.Ed.2d 292 (2001).

Corps guidance not published in the Code of Federal Regulations or Federal Register do not have the force of law. *Pearce v. United States*, 261 F.3d 643, 648-49 (6th Cir. 2001); *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000).  Given that the internal memoranda are self serving, non-promulgated, and are prohibited from use under Department of Justice policy, they should be rejected by the Court and stricken from review.

As Augusta noted in its March 6, 2020 Response, Doc. # Doc. # 46 at III.B., on April 9, 2019, Senators Lindsay O. Graham, Tim Scott, Johnny Isakson and Dave Perdue wrote to Federal Defendants clarifying the intent of the WIIN Act was in fact as written to maintain the elevation of the Savannah River as it had been.  The representatives specifically rejected the levels they observed during the March 2019 drawdown simulation.  Entry # 1, Compl., at Ex. O; Entry 23, at Ex. O.  The same concerns were raised on March 31, 2019 by Congressmen Joe Wilson and Rick Allen at a public meeting. Doc. # 23, Augusta Compl. at Ex. P, Transcript of City of Augusta Public Meeting, Lock and Dam Meeting, March 31, 2019.

As the language of WIIN 2016 is clear and unambiguous, Augusta requests summary judgment as to Claim 1 and an order declaring that the pool must be maintained as of the date of the enactment of WIIN 2016, or 114.76 NVGD, and issue an injunction enjoining Federal Defendants from implementing the action identified in the SEA or any other action which would lower the pool.

### C.    Augusta Has Standing to Pursue Declaratory and Injunctive Relief Set Forth in Count 3 Regarding the Settlement Agreement and WIIN Act

Federal Defendants misconstrue Augusta's Count 3. Augusta seeks a Declaratory Judgment in Count 3 declaring that (1) The Federal Defendants must comply with the Settlement Agreement, and (2) The Federal Defendants must comply with the WIIN Act. Under the One-Plaintiff rule, dismissal based upon standing is improper where here there has been no challenge to standing for more than one plaintiff.

### 1.    The Court May Not Dismiss Augusta's Claims under the 'One-Plaintiff' Rule

The U.S. Supreme Court and circuit courts hold that inquiry into standing is improper where one party has standing. Under the one-plaintiff rule, a court need not consider the standing of other plaintiffs once one plaintiff is decided to have standing. In *Town of Chester v. Laroe Estates*, 137 S.Ct. 1645 (2017), the Supreme Court restated the longstanding rule that a litigant-intervenor need not meet the requirements of Article III standing if the intervenor does not seek relief not requested by the initial plaintiff. The Supreme Court has applied the one-plaintiff rule consistently in numerous decisions.[12]

---

[12] *Horne v. Flores*, 557 U.S. 433, 446–47 (2009); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008); *Massachusetts v. EPA*, 549 U.S. 497, 498 (2007); *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *McConnell v. FEC*, 540 U.S. 93, 233 (2003); *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999); *Clinton v. City of New York*, 524 U.S. 417, 431 n.19 (1998); *Dep't of Labor v. Triplett*, 494 U.S. 715, 719 (1990); *Pennell v. City of San Jose*, 485 U.S. 1, 8 n.4.(1988); *Bowen v. Kendrick*, 487 U.S. 589, 620 n.15 (1988); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986); *Dir., Office of Workers' Comp. Programs v. Perini N. River Assocs.*, 459 U.S. 297, 305 (1983); *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981); *Babbitt v. United Farm Works Nat'l Union*, 442 U.S. 289, 299 n.11 (1979).

Augusta is seeking the same relief as South Carolina, specifically declaratory and injunctive relief with respect to the NSBLD.[13]  Federal Defendants have not disputed standing for three plaintiffs – State of South Carolina, South Carolina Department of Health and Environmental Control (DHEC), and South Carolina Savannah River Maritime Commission (Commission). Accordingly under the one-plaintiff rule the Court would be rendering an improper advisory opinion and wasting judicial resources by ruling on Federal Defendants request to dismiss.

2.    **Augusta's Standing Regarding Count 3**

The Settlement Agreement embodies the substance of this Court's Order resolving the 2012 Savannah Harbor Expansion Project and incorporates by reference the CWA Section 401 water quality certification by South Carolina and November 4, 2011 Biological Opinion. Augusta is a political subdivision of the State of Georgia with authorities for management of the Savannah River in its sovereign role and pursuant to Federal Power Act, 16 U.S.C. 791 et seq. regarding the Augusta Diversion Dam. See Federal Energy Regulatory Commission, Augusta Canal Project, P-11810.  The pool referenced in the WIIN Act is Augusta's water supply, implemented through the Federal Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.* **Ex. B, Wiedmeier Aff. at ¶¶ 3, 6, 8**.  Augusta is repeatedly referenced in the Settlement Agreement and its interests are protected by the Settlement Agreement in that the Settlement Agreement requires the NSBLD remain in place, with fish passage provided through an "Off-Channel Rock Ramp."  **Ex. B, Wiedmeier Aff. at ¶ 20; Ex. A, Robertson Aff. at ¶ 21**.   The Settlement

---

[13] The only request for relief differing for Augusta is Augusta has not sought an injunction regarding the dredging of the Savannah Harbor under the SHEP, and of course Augusta has not requested relief regarding properties South Carolina holds with respect to flowage easements.

Agreement specifically requires Georgia Port Authority to "commit[] to work with the City of Augusta and Georgia EPD" with respect to "applicable responsibilities arising from Federal Energy Regulatory Commission licensing of the Augusta Canal and Diversion project, such responsibilities to include support of the fisheries by providing adequate flows." **Ex. B, Wiedmeier Aff. at Attachment A, Settlement Agreement at II., Commitments by GPA, at II. C, Page 9 of 19.; Attachment A, Settlement Agreement at Exhibit B, Commission Terms and Conditions, at ¶ 21**. Augusta's Diversion Dam and the Augusta Shoals are key features in the justification for action at the NSBLD. **Ex. B, Wiedmeier Aff. at ¶¶ 9-12.**

Federal Defendants built into the Settlement Agreement provisions prohibiting South Carolina and Conservation Groups from assisting, encouraging, supporting, or otherwise aiding third parties such as Augusta in any seeking any legal review, directly affecting Augusta and its citizens rights and interests through a prohibition on the normal political communication process through which Augusta represents its citizens interests. **Ex. B, Wiedmeier Aff. at Attachment A, Settlement Agreement at V.A. ¶¶ 8, 9.** The provision is essentially a gag order regarding a matter of extreme public importance and affecting hundreds of thousands in the region. Federal Defendants now argue that Augusta, a sovereign governmental entity, lacks standing to seek a declaratory ruling as to the terms of the Settlement Agreement upon which Augusta and indeed the entire Augusta region relied. Federal Defendant's position is particularly egregious where in a shocking defiance of this Court's Order and of the rights and interests of the citizens in the Augusta Region, Federal Defendants unilaterally rejected the Settlement Agreement without even so much as notifying this Court. The Court wisely retained continuing jurisdiction over the order and Settlement Agreement. Federal Defendants express their disdain, characterizing the Court's order as an order ***'purporting to retain'*** continuing jurisdiction. Fed. Def. Mot., at n. 8.

23

Augusta – as the representative of the largest concentration of citizens in the Augusta region - carefully considered the components of the Settlement Agreement and Court Order which were public at the time. **Ex. B, Wiedmeier Aff. at ¶ 20; Ex. A, Robertson Aff. at ¶ 21.** The Settlement Agreement actually rejected removal of the NSBLD in favor of the "Off-Channel Rock Ramp." **Ex. B, Wiedmeier Aff. at ¶ 11, Attachment B, November 4, 2011 Biological Opinion at 191, Reasonable and Prudent Measure ("RPM") 1.**

Where the Settlement Agreement specified that the NSBLD remain in place, Augusta is entitled to and properly should rely upon that public Court Order adopting the Settlement Agreement.

Federal Defendants urge the Court to construe the terms of the Settlement Agreement as a contract, and the Settlement Agreement has no clause limiting or restricting third party beneficiaries. The Settlement Agreement specifically and directly identifies Augusta and both provides benefits (Georgia Port Authority to assist) and restrictions (prohibition on assisting third parties in seeking review) that directly affect and implicate Augusta. Accordingly, Augusta clearly has standing as a contract beneficiary and affected party to seek the declaratory relief requested in Count 3.

The Court Order and Settlement Agreement did not affect or its citizens interests at the time because removal of the NSBLD was not proposed or even possible under the Settlement Agreement. **Ex. B, Wiedmeier Aff.**

Federal Defendants seek to deprive Augusta of a right to protect the interests of its citizens, while at the same time the Department of Justice writes in one of its most widely disseminated and important policies regarding judicial orders that it must proceed with caution in entering into such order because they may "**deprive the elected representatives of the people of**

24

the affected jurisdiction of control of their government."  U.S. DOJ, Principles and Procedures for Civil Consent Decrees and Settlement Agreements with State and Local Governmental Entities (Nov. 7, 2018)("DOJ 2018 Settlement Agreement Memo").  Here, Federal Defendants did not seek public input or comment or even publish the availability or possibility of Settlement Agreement to the public as many agencies do.  *See* U.S. EPA, Directive Promoting Transparency and Public Participation in Consent Decrees and Settlement Agreements (Oct. 2018). Nonetheless, Federal Defendants argue Augusta has no rights.   DOJ's 2018 Settlement Agreement memo emphasizes that state and local governments are "sovereigns with special and protected roles under our Constitutional Order" but here, speaking out of the other side of the Federal mouth, assert Augusta cannot even stand before the Court to protect its sovereign rights and that of its citizens.

### 3.    Augusta meets all criteria for standing

Standing is conferred where a plaintiff pleads (1) an injury in fact that is (2) fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable court decision. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).  At the pleading stage, this FRCP 12 motion to dismiss, 'general factual allegations of injury resulting from Defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts necessary to support the claim."  Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

Augusta has met all three standing criteria.  As noted above and in Augusta's Complaint, Augusta's economic health and future, water supply,  parks, aquatic habitat, fish and wildlife, conservation, floodplains, wetlands, socioeconomic resource, recreation, navigation, historic resources, and aesthetics other resources are affected by the Federal Defendants October 2019 PAAR/SEA/FONSI.  Augusta's Complaint clearly identifies Augusta's interests and injury.

25

Doc. # 23, Augusta Compl. at ¶¶ 14-31.  Among the injuries identified in Augusta's Complaint are the Federal Defendants injury to Augusta's water supply  (Augusta Compl. at ¶ 18, 222; Ex. D., **Ex. B, Wiedmeier Aff. at ¶¶ 5-6**; **Ex. A, Robertson Aff. at ¶ 22**), Augusta's riparian rights (Augusta Compl. at ¶ 20; Ex. D), Augusta's Parks (Augusta Compl. at ¶ 21, 222; Ex. D.), Augusta's economic interests (Augusta Compl. at ¶¶ 22, 222; Ex. D; **Ex. A, Robertson Aff. at ¶ 22**), Augusta's numerous civic and recreational activities on the Savannah River (Augusta Compl. at ¶ 23, 222; Ex. D; **Ex. A, Robertson Aff. at ¶ 22**), Augusta city planning ((Augusta Compl. at ¶ 24, 222; Ex. D; **Ex. A, Robertson Aff. at ¶ 22**), natural resources in Augusta including on aquatic resources, fisheries, floodplain, and a large number of acres of wetlands (Augusta Compl. at ¶ 25, 222; Ex. D; **Ex. A, Robertson Aff. at ¶ 22**), Augusta historic resources including the Augusta Canal (Augusta Compl. at ¶ 26, 222; Ex. D; **Ex. A, Robertson Aff. at ¶ 22**), costs of mitigation and repair to Augusta parks, floodplains, wetlands, socioeconomic resource, recreation, historic resources, and other resources (Augusta Compl. at ¶ 27, 222; Ex. D; **Ex. A, Robertson Aff. at ¶ 22**), navigation and safety issues including exposure of a training wall or jetty (Augusta Compl. at ¶ 30, 222; Ex. D; **Ex. A, Robertson Aff. at ¶ 22**).

Injury can also be shown by demonstrating that a violation increases the risk of injury or harm. *Committee to Save the Rio Hondo* V. *Lucero,* 102 F.3d 445, 447-52 (10th Cir. 1996) Here the violation of the Settlement Agreement and its provisions leaving the NSBLD in place, and the violation of the conditions of the South Carolina Section 401 water quality certification requiring the NSBLD remain in place with an Off-Channel Rock Ramp lower the pool by as much as 5.5 feet causing harm to Augusta, the violation of the WIIN Act (Count 1) CWA (Count 2) establish the standing element of harm.

26

The harm to Augusta is directly traceable to the challenged conduct. As set forth in the Complaint, it is the lowering of the pool which results in harm and injury to Augusta's interests. See also **Ex. A, Robertson Aff. at ¶ 22; Ex. B, Wiedmeier Aff. at ¶¶ 5-6.**

The injury to Augusta is likely to be redressed by a favorable court decision.  As to Count 3, declaratory ruling respecting the Settlement Agreement and Order, because the Settlement Agreement and Order leaves the NSBLD in place (Ex. B, Wiedmeier Aff.; Ex. A, Robertson Aff.), the reduction in pool level would not occur as identified in Federal Defendants' October 2019 PAAR/SEA/FONSI.  This in turn would preclude the harm and injury to Augusta as set out in Augusta's Complaint.  Similarly, a ruling in favor of Augusta on Count 1, violation of the WIIN Act and injunction would retain the pool elevation addressing injury and harm to Augusta. By the same token, compliance with the South Carolina CWA Section 401 water quality certification, which also requires leaving the NSBLD in place, would address Augusta's injury and harm.  Accordingly, The injury to Augusta is likely to be redressed by a favorable court decision.

IV.    **CONCLUSION**

Accordingly, Augusta respectfully requests that the Court deny Federal Defendants'

Motion to Dismiss Counts 1, 2 and 3.

Respectfully submitted this 27th day of April 2020.

By: s/ John W. Fletcher

David M. Moore, Esq.
Georgia Bar 518830 (admitted Pro Hac Vice)
Mary Ellen Ternes, Esq.
South Carolina Bar 0070237 (admitted Pro Hac Vice)
Earth & Water Law, LLC
Promenade, Suite 1900
1230 Peachtree Street, NE
Atlanta, Georgia 30309-3592
(404)245-5421

M. Dawes Cooke, Jr., Esq. (Fed I.D. # 288)
John W. Fletcher, Esq. (Fed. I.D. # 9378)
Barnwell, Whaley, Patterson, and Helms, LLC
288 Meeting Street, Suite 200
Charleston, SC 29401
(843)577-7700