# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## AIKEN DIVISION

| | |
|---|---|
| State of South Carolina, South Carolina Department of Health and Environmental Control; and Savannah River Maritime Commission, ) ) ) ) ) | |
| Plaintiffs, ) ) ) | |
| and ) ) | C.A. No. 1:19-3132-RMG |
| Augusta, Georgia, ) ) | |
| Plaintiff-Intervenor, ) ) ) | |
| vs. ) ) | |
| United States Army Corps of Engineers; United States Army Corps of Engineers, Savannah District; Ryan McCarthy, in his official capacity as Secretary of the Army; Lt. General Todd T. Semonite, in his official capacity Commanding General and Chief of Engineers, U.S. Army Corps of Engineers; Major General Diana M. Holland, in her official capacity as Commanding General, South Atlantic Division, U.S. Army Corps of Engineers; and Colonel Daniel H. Hibner, in his official capacity as District Engineer, U.S. Army Corps of Engineers, Savannah District, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER AND OPINION** |
| Federal Defendants, ) ) | |
| and ) ) | |
| Georgia Ports Authority, ) ) | |
| Defendant-Intervenor. ) ) | |

1

This matter comes before the Court on the Federal Defendants' motions to dismiss the complaints of Plaintiffs and Plaintiff-Intervenor. (Dkt. Nos. 37, 56). For reasons set forth below, the Court denies the Federal Defendants' motions to dismiss.

## Legal Standard

Federal Defendants have moved to dismiss the complaints of the Plaintiffs and Plaintiff-Intervenor on the basis of Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the asserted claims are not within the subject matter jurisdiction of this Court and such claims lack legal merit. A Rule 12(b)(6) motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). On a Rule 12(b)(6) motion, the court is obligated to "assume the truth of all facts alleged in the complaint and any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). All facts must be accepted in a light most favorable to the nonmoving party, but the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Id.* Generally, to survive a motion to dismiss under Rule 12(b)(6), the complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2000).

A Rule 12(b)(1) motion to dismiss challenges the court's jurisdiction to adjudicate the matter before it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). A challenge to subject matter jurisdiction may contend either (1) that the complaint fails to allege facts sufficient to establish subject matter jurisdiction; or (2) "that the jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213. 1219 (4th Cir. 1982). Where the sufficiency of the allegations in the complaint is challenged, "the facts alleged in the complaint are taken as

true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). If, however, the defendant contends that the allegations in the complaint are untrue, the plaintiff bears the burden of proving the facts establishing jurisdiction and the court may "decide disputed issues of fact." *Id.* In that case, because the plaintiff's allegations are not presumed to be true. *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016).

**Factual Background**

This action arises out of legislation adopted by Congress in 2016 under the Water Infrastructure Improvements for the Nation Act ("WIIN Act") relating to the New Savannah Bluff Lock and Dam ("Savannah Bluff") and the plan subsequently announced by the Army Corps of Engineers at the site, Alternative 2-6d, which Plaintiffs and Plaintiff-Intervenor argue is violative of WIIN Act, the Clean Water Act, and a 2013 Settlement Agreement between the Plaintiffs and the Federal Defendants. Plaintiffs and Plaintiff-Intervenor seek declaratory and injunctive relief. Defendants and Defendant-Intervenor contend that this Court lacks subject matter jurisdiction to address these claims and that such claims are without legal merit, requiring the dismissal of this lawsuit.

The Savannah Bluff Lock and Dam were originally constructed in 1937 to promote commercial navigation on the Savannah River up to Augusta, Georgia. The dam at the site created a pool of water that was of considerable benefit to water supply users and for recreational purposes in the area, including the city of Augusta, Georgia, thirteen miles upriver from the dam. Although commercial navigation ceased at the site in the late 1970s and the

Army Corps allowed the lock to fall into disuse and disrepair, Congress continued to authorize the project, which preserved the pool of upriver water. (Dkt. No. 1 at ¶¶ 50-52, 61-66).[1]

Federal Defendants developed a plan for the deepening of the Savannah Harbor, known as the Savannah Harbor Expansion Project ("SHEP"), a major federal project, which required an assessment of adverse environmental consequences. The National Marine Fisheries Service provided a Biological Opinion regarding the SHEP in 2011, which required the Federal Defendants to take certain actions to mitigate the anticipated adverse environmental impact of the harbor project on species protected by the Endangered Species Act. These mandated mitigation actions included the construction of a fish passage around the Savannah Bluff Lock and Dam, which is 180 miles upriver from the Savannah Harbor, to allow Shortnose and Atlantic Sturgeon to pass through to historical spawning grounds upriver. The fish bypass was to be constructed prior to or in conjunction with the harbor dredging to minimize the adverse impacts of the project on the sturgeon habitat. (*Id*. at ¶¶ 68-73).

A lawsuit was commenced between by Plaintiffs in 2012 challenging various aspects of the SHEP. The suit was resolved by a mediated settlement agreement in 2013. The settlement agreement incorporated a fish bypass at Savannah Bluff with the Lock and Dam remaining in place. As part of the settlement agreement, South Carolina agreed to issue water quality and navigation permits based upon the plans presented by the Federal Defendants. At the time that Plaintiffs executed the settlement agreement and issued the state permits for the SHEP in 2013, there was no plan to remove the Savannah Bluff Lock and Dam.

---

[1] The complaint of Plaintiff-Intervenor Augusta, Georgia (Dkt. No. 23) closely tracks the allegations in Plaintiffs' complaint. For simplicity purposes, citation is made primarily here to the Plaintiffs' complaint.

Things changed in 2016 with the adoption of the WIIN Act, which deauthorized the Savannah Bluff Lock and Dam and authorized the Army Corps to either (1) "repair the lock wall" of the Savannah Bluff Lock and Dam to "maintain the pool for navigation, water supply, and recreation activities, as in existence on the date of enactment of the Act"; or (2) construct across the Savannah River "a structure that is able to maintain the pool for water supply and recreation activities, as in existence on the date of the enactment of the Act." 2016 Public Law 114-322, §§ 1319(b)(1)(A), (c)(1)(A)(i), (c)(1)(A)(ii)(I). If the second option was selected, the Army Corps was directed, upon completion of the new structure across the Savannah River, to remove the Savannah Bluff Lock and Dam. *Id*. at § 1319(c)(1)(A)(ii)(II). On the date of the enactment of the WIIN Act, the pool upriver from Savannah Bluff Lock and Dam was "approximately 114.5 feet NGVD29." (Dkt. No. 1 at ¶ 148).

The Army Corps subsequently announced a proposed plan that removed the existing dam at Savannah Bluff and replaced it with a fixed crest weir with a rock ramp that stretched across the entirety of the Savannah River. Plaintiffs allege that this proposal does not maintain the pool on the date of the enactment of WIIN Act, reducing the pool by 5.5 feet. (*Id*. at ¶¶ 107-108, 130). A simulated drawdown test was conducted by the Army Corps on February 9, 2019 to determine the impact of Alternative 2-6d on the pool, which had to be halted on February 15, 2019 because the reduction in the pool was so great that it created instability on the riverbank up river and numerous docks were left in mud flats. (*Id*. at ¶¶ 108-111).

The Army Corps proposal for Savannah Bluff was widely criticized in the public comments phase of the review by the city of Augusta and local citizens in the area, which objected to the adverse impact of the project on water supply, historic sites, habitat, and recreational activities. Only 2% of the public comments supported the proposed project. (*Id*. at

132; Dkt. No. 23 at ¶¶ 18-29). The Attorney General of South Carolina objected to the failure of the Federal Defendants to seek new state clean water and navigation permits for the new Savannah Bluff project on the basis it was a new proposal that was not reviewed prior to issuance of the permits arising out of the 2013 settlement agreement. (*Id.* at ¶¶ 113-114). Further, the Army Corps' Final Independent External Peer Review Report, issued on May 16, 2019, raised multiple concerns regrading the proposed project, including the fact that the proposal failed to maintain the pool in existence on the date of the enactment of the WIIN Act. (*Id*. at ¶¶ 119-121).

Federal Defendants announced the formal adoption of its proposed plan for Savannah Bluff, Alternative 2-6d, on October 29, 2019, making this a final agency decision. (*Id.* at ¶ 129). The Army Corps asserted that the WIIN Act did not mandate a specific water level for the pool be maintained, only that the functionality of the river for water supply and recreation continue. The Army Corps further asserted that no new state permitting was required because the necessary permits had already been authorized as part of the 2013 settlement agreement. This lawsuit thereafter followed.

## Legal Analysis

Federal Defendants argue that the newly approved project for Savannah Bluff is fully consistent with the mandates of the WIIN Act and the Clean Water Act, and that Plaintiffs are simply attempting to relitigate the 2013 settlement agreement. Federal Defendants further contend that this Court is barred by the doctrine of sovereign immunity from reviewing the Army Corps' policy choices in the newly adopted Savannah Bluff project and that Congress left this matter wholly to the agency's discretion. Thus, the Federal Defendants move to dismiss this lawsuit so they could proceed to construct their proposed new structure across the Savannah

River and to then remove the lock and dam at Savannah Bluff without the interference of the Plaintiffs, Plaintiff-Intervenor or this Court.

### A.     The WIIN Act Claims

A central issue in this motion to dismiss, and the lawsuit itself, revolves around the requirements of Section 1319 of the WIIN Act.  The Act provides the Army Corps with two distinct options: (1) repair the lock wall at Savannah Bluff to allow safe passage of sturgeon so long as the project "maintain[s] the pool for navigation, water supply, and recreational activities, as is in existence on the date of the enactment of the Act"; or (2) construct a new structure at the location and remove the lock and dam, provided that the "structure is able to maintain the pool for water supply and recreation, as in existence on the date of enactment of the Act." § 1319(c)(1).  Plaintiffs allege that the water level on the date of adoption of the WIIN Act, December 16, 2016, was approximately 114.5 feet NGVD29, and the estimated impact of the Army Corps' project at Savannah Bluff would be to lower the pool below that statutorily mandated level.  (Dkt. No. 1 at ¶¶ 130, 142, 148).

Federal Defendants seek to dismiss Plaintiffs' First Cause of Action (Dkt. 1 at ¶¶ 138-149) and Plaintiff-Intervenor's First Cause of Action (Dkt. No. 23 at ¶¶ 157-169) relating to their WIIN Act claims.  Federal Defendants argue that the WIIN Act requires only that any replacement structure for the Savannah Bluff Lock and Dam maintain the pool sufficient for water supply and recreational activities. (Dkt. No. 103 at 32).  From this interpretation, Federal Defendants contend that they meet the statutory obligation by maintaining the "functionality" of the pool of water upriver from the new structure, without any need to maintain the pool "in existence on the date of the enactment of the Act."  The difficulty with this argument is that Federal Defendants have read into the statute the word "sufficient" that is not provided and a

7

concept of functionality that is likewise missing. It is, of course, well settled that courts "must construe statutes as written and not add words of their own choosing." *Ignacio v. United States*, 674 F.3d 252, 255 (4th Cir. 2012).

Federal Defendants seek to avoid any decision on the merits by arguing that this Court lacks jurisdiction, sovereign immunity bars this action, and the Court is obligated to defer to the agency interpretation of the statute. Federal Defendants' sovereign immunity argument is premised on the contention that Plaintiffs have no jurisdiction under the Administrative Procedures Act ("APA"). Federal Defendants argue that this matter is left to the discretion of the Army Corps, making review under the APA unavailable. The APA creates a "strong presumption" in favor of judicial review of agency actions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015). Consequently, the exception under the APA under § 701(a)(2) for matters "committed to agency discretion by law" has been read very narrowly and applies only in "the rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

The relevant provisions of the WIIN Act hardly fit the part of a standardless grant of essentially unlimited discretion to the agency. The statute clearly states that Congress has limited the agency's choices to two distinct options and each option must "maintain the pool" existing on the date of the Act's adoption. While the selection between the two defined options is left to the agency's discretion, there is no discretion regarding the adoption of any project that fails to maintain the pool on the date of enactment. Plaintiffs and Plaintiff-Intervenor challenge the Army Corps' final decision on the basis that its selected project fails to "maintain the pool"

and, consequently, is in excess of the agency's statutory authority. Jurisdiction is provided under the APA for judicial review of agency action "not in accordance with law." 5 U.S.C. § 706(2)(A).

Federal Defendants' argument regarding agency discretion, as well as the issue of deference to the agency's interpretation of statutory law, addressed below, turns on the issue of what the WIIN Act actually requires regarding the maintenance of the pool. The Army Corps contends its only obligation is to maintain a level of functionality for water supply and recreational activities in existence at time of the WIIN Act's adoption. This interpretation provides the agency broad discretion to remove the lock and dam without maintaining the pool that existed when the WIIN Act was adopted.

There is, however, no suggestion under the statutory language that the Army Corps is free to make a standardless judgment about functionality. To the contrary, Congress' statutory language clearly limited the agency discretion, requiring that any project at the site not alter the pool existing on the date of enactment. The challenge of the Plaintiffs and Plaintiff-Intervenor here is not barred under the APA as a matter reserved to agency discretion.

Federal Defendants next contend that this Court is obligated to defer to the agency's statutory interpretation of the WIIN Act. This fundamentally misstates the law. Where the intent of Congress is clear from the statutory language, "the court, as well as the agency, must give effect to the unambiguously expressed into of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). This recognizes the basic principle that "the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843, n. 9. Only where a statute is ambiguous and Congress has left a gap which the agency is

required to fill with policies must the courts defer to an agency in a matter of statutory interpretation. Here, Congress has mandated the selection of one of two options so long as the level of the pool is maintained that existed on the date of enactment. There is no ambiguity as to the intent of Congress, and the agency's "functional analysis" interpretation of the statute is entitled to no deference.[2]

Federal Defendants additionally argue that the APA is unavailable to Plaintiffs and Plaintiff-Intervenors because they allegedly have an adequate remedy at law under the Tucker Act. 28 U.S.C. § 1491(a)(1). While Federal Defendants are correct that the APA is inapplicable if a party has an adequate remedy at law such as money damages, 5 U.S.C. § 704, Plaintiffs and Plaintiff-Intervenors seek only equitable relief in the form of a declaratory judgment and injunctive relief. It is well settled that Tucker Act claims are limited to money damages and equitable relief is not available. *Lee v. Thornton*, 420 U.S. 139, 140 (1975); *United States v. King*, 395 U.S. 1, 2-3 (1969). Moreover, many of the injuries asserted by the Plaintiffs and Plaintiff-Intervenor, such as loss of recreational enjoyment of the Savannah River upriver from the planned new structure and damage to local habitat, cannot be adequately remedied by a money judgment.

The Court finds that the WIN Act unambiguously requires that if the Army Corps elects the option to remove the Savannah Bluff Lock and Dam, the agency must construct a replacement structure "that is able to maintain the pool for water supply and recreational

---

[2] Had Congress intended to allow a new structure be constructed across the Savannah River that merely provided sufficient water for water supply and recreational activities, it did not need to mandate that the "structure" be "able to maintain the pool" that existed on the "date of enactment." § 1319(c)(1)(A)(ii)(I). The Army Corps' functionality interpretation renders superfluous the statutory language clearly designed to mandate the maintenance of the pool existing on the date of the WIN Act's adoption.

activities" at a very precise level—that level existing on the date of the adoption of the Act. Congress plainly required any structure that would replace the Savannah Bluff Lock and Dam "maintain the pool" that existed "on the date of enactment," something that Alternative 2-6d allegedly does not do. The Court, at the motion to dismiss stage, must assume the facts alleged in the complaint are true. Consequently, the Court finds Plaintiffs and Plaintiff-Intervenor have pled plausible claims challenging the final decision of the Army Corps under the APA relating to the alleged violation of the WIIN Act, and denies the Federal Defendants' motion to dismiss Plaintiffs' First Cause of Action and Plaintiff-Intervenor's First Cause of Action.

      **B.**      **Clean Water Act Claims**

Plaintiffs and Plaintiff Intervenor assert claims that the Federal Defendants failed to obtain state-issued environmental permits for Alternative 2-6d, which they assert are mandated by the Clean Water Act ("CWA"). Federal Defendants have moved to dismiss Plaintiffs' Second Cause of Action (Dkt. No. 1 at ¶¶ 150-169) and Plaintiff-Intervenor's Second Cause of Action (Dkt. No. 23 at ¶¶ 170-189), arguing that the CWA does not require new state permits under the present circumstances and that South Carolina has failed to provide the requisite sixty-day notice for bringing claims under the CWA.

The CWA, under 33 U.S.C. § 1323(a), requires the federal government, when undertaking any activity that results or may result in the discharge or runoff of pollutants, to comply with state environmental requirements. Plaintiffs argue this requires the Army Corps to obtain a 401 water quality certificate and a navigation permit from South Carolina for any federal project in which discharge of pollutants is anticipated. Federal Defendants contend that any CWA claim by South Carolina must be brought under the "citizen suit" provision of the Act, 33 U.S.C. § 1365, which requires notice to the federal administrator of the project sixty days

before filing suit. § 1365(b)(1)(A). Federal Defendants assert that the sixty-day notice requirement is mandatory, requiring the Court to dismiss the CWA claims, since the required notice was allegedly not provided.

A suit against the federal government is barred by the doctrine of sovereign immunity unless Congress has provided statutory authorization for such a suit. Lawsuits to enforce the CWA's requirement of state environmental permits for federal projects are commonly brought under the APA, which contains an explicit waiver of sovereign immunity. *See Appalachian Voices v. State Water Control Board,* 912 F.3d 746, 753 (4th Cir. 2019); *Sierra Club v. State Water Control Board,* 898 F.3d 383, 403 (4th Cir. 2018); *United States v. United States Army Corps of Engineers,* 259 F.Supp.3d 732, 743 (N.D. Ohio 2017).

Federal Defendants insist that the Plaintiffs must utilize the "citizen suit" provision of the CWA as the exclusive way to bring a Section 1323(a) suit, and the Plaintiffs have failed to provide the sixty-day notice required before bringing a "citizen suit." There is, however, ample authority demonstrating that the APA is a proper path for asserting Section 1323(a) claims. Further, Section 1365, the "citizen suit" provision, appears to distinguish suits brought by citizens from those brought by a state government. *See* 33 U.S.C. §§ 1365(b)(1)(A), (B). Moreover, Plaintiffs alleged that multiple South Carolina officials, including the Governor and the Attorney General, placed the Army Corps clearly on notice of the state's claims and objections to the agency's failure to obtain state permits and more than sixty days passed after such notices before this lawsuit was filed. (Dkt. No. 1 at ¶¶ 114, 117). *See Ohio Valley Environmental Coalition v. Alex Energy, Inc.*, 12 F. Supp.3d 844, 863-64 (S.D. W.Va. 2014) (recognizing a letter "to the appropriate recipients" providing the "necessary details for valid notice" satisfies requirements of the sixty-day rule). In sum, the Court finds that the APA

provides a proper statutory basis for bringing the Section 1323(a) suit and, regardless, Plaintiffs alleged in their complaint that the Army Corps received ample notice of South Carolina's claims and objections more than sixty days before the filing of this suit, satisfying the Section 1365(b)(1)(A) notice requirement, if such a requirement exists.

Federal Defendants next argue that the federal government is not required to meet the state permit requirements where compliance would affect or impair its authority to "maintain navigation." 33 U.S.C. § 1371. Federal Defendants then note that the SHEP, which includes the dredging of the Savannah Harbor, is a matter affecting the maintenance of navigation. (Dkt. No. 37 at 29). Plaintiffs assert that the state permits in question here address only the project at Savannah Bluff, which is 180 miles upriver from the Savannah Harbor, and have nothing to do with the maintenance of navigation on the Savannah River. Viewing the facts at this stage of the litigation in a light most favorable to the nonmoving parties, the Court denies the Federal Defendants' motion to dismiss on the basis of the CWA's maintenance of navigation exception.

Federal Defendants further assert that the 2013 settlement agreement authorized state environmental permits for all aspects of the SHEP, including any mitigation projects, eliminating the need for any additional state permits. Plaintiffs allege that prior to the 2013 settlement agreement there was no plan to remove the Savannah Bluff Lock and Dam and they did not contemplate such a possibility because removal of the Lock and Dam was at the time prohibited by federal law. The plan under challenge, Alternative 2-6d, was proposed following the adoption of the WIIN Act in 2016, which gave the Army Corps the option for the first time to remove the Savannah Bluff Lock and Dam.

The parties point to different provisions of the settlement agreement to support their respective positions. Federal Defendants note South Carolina's agreement to issue the necessary

13

permits for the SHEP. (Dkt. No. 1-8 at 3). Plaintiffs reference another provision of the settlement agreement, in which South Carolina reserves the right to "require additional certifications and permits" should "unforeseen specific problems . . . arise." (*Id*. at 29). The parties dispute whether the Federal Defendants' revised plans for Savannah Bluff constitute an anticipated part of the mitigation effort for the SHEP or an unforeseen problem outside the contemplation of the parties at the time of the settlement agreement. In light of these factual disputes, disposition of this issue by a motion to dismiss is not appropriate.[3]

The Federal Defendants' motions to dismiss Plaintiffs' Second Cause of Action and the Plaintiff-Intervenor's Second Cause of Action relating to the CWA claims are denied.

### C.     Breach of Settlement Agreement Claims

Plaintiffs and Plaintiff Intervenors have asserted that the Army Corps' new plans for Savannah Bluff constitute a breach of the 2013 settlement agreement, including a provision that requires that the mitigation at Savannah Bluff be undertaken prior to or concurrent with the Savannah Harbor dredging. Federal Defendants have moved to dismiss Plaintiffs' Third and Fifth Cause of Action (Dkt. No. 1 at ¶¶ 170-178, 188-197) and Plaintiff-Intervenor's Third Cause of Action (Dkt. No. 23 at ¶¶ 190-197), arguing that any action alleging a breach of the settlement agreement is barred by sovereign immunity and that the federal government's

---

[3] During oral argument on the motion to dismiss, the parties discussed in detail the issue of foreseeability of Alternative 2-6d at the time of the settlement agreement. (Dkt. No. 103 at 18-29). Federal Defendants argue that prior to the settlement agreement there were working groups that included Army Corps and South Carolina officials that discussed a broad universe of approaches to the Savannah Bluff Lock and Dam, including removal of the Lock and Dam. Plaintiffs assert that the focus was always on plans that maintained the Lock and Dam because removal was then not a legal option. This evidentiary dispute is obviously beyond the scope of this motion to dismiss and would need to be developed with a full evidentiary record. The Court notes, however, that merely a passing mention of various options during working group meetings, at a time in which removal of the Lock and Dam was then unlawful, would not likely form a basis for waiver of South Carolina's statutory rights under the CWA or the State's right under the settlement agreement to require new environmental certificates for "unforeseen specific problems."

compliance with certain provisions of the settlement agreement relating to Savannah Bluff are now impossible because of the adoption of the WIIN Act. Federal Defendants also argue that Augusta has no standing to challenge a breach of the settlement agreement because it was not a party to the agreement.

This Court retained jurisdiction over the settlement agreement, and Plaintiffs plainly have a right to seek relief from the Court for any alleged breach. (C.A. No. 9:12-610-RMG, Dkt. No., 99). Plaintiffs may pursue a breach of a settlement agreement claim via a separate suit to enforce the agreement or a Rule 60(b)(6) motion to vacate the prior dismissal. *Harmon v. Pauley*, 678 F.2d 479, 481 (4th Cir. 1978). The Court has jurisdiction over these claims asserted by Plaintiffs for breach of the settlement agreement. Since one party to this action has standing, "it is immaterial that other plaintiffs might be unable to demonstrate their own standing." *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019).

Plaintiffs have made sufficient allegations to state plausible claims for breach of the settlement agreement. The Federal Defendants have asserted a variety of defenses, including impossibility, which are more appropriate to address with a full record. Further, Federal Defendants and Defendant Intervenor have expressed understandable concern and some alarm with the Plaintiffs' requested remedy for the alleged breach of the settlement agreement, the enjoining of the dredging in the Savannah Harbor until the Savannah Bluff mitigation project is completed. The Court is frankly perplexed by this requested remedy by the Plaintiffs, which appears to be completely out of proportion to any contractual dispute present here and an inappropriate remedy under the circumstances. A final decision on the Plaintiffs' breach of the settlement agreement claim and any remedy that might be necessary, however, must await a

fuller record and a decision on the merits. Federal Defendants' motions to dismiss Plaintiffs' Third and Fifth Causes of Action and Plaintiff-Intervenor's Third Cause of Action are denied.

### D.    Flowage Easement Claims

Plaintiffs seek declaratory and injunctive relief to enforce certain flowage easements that the State obtained when the Savannah Bluff Lock and Dam were constructed in the 1930s, which Plaintiffs contend mandate that a water depth of 114.5 feet be maintained. (Dkt. No. 1-5). Plaintiffs assert that the new Savannah Bluff structure would lower the pool level allegedly mandated by the flowage easements. Federal Defendants seek dismissal of Plaintiffs' Fourth Cause of Action (Dkt. No. 1 at ¶¶ 179-187), arguing that the APA is not an appropriate jurisdictional basis for the claim because there is available an alternative method of relief under the Tucker Act. Federal Defendants further contend that the flowage easements set a maximum pool, rather than a minimum, and, thus, provide no basis for relief.

Plaintiffs seek only declaratory and injunctive relief under this claim, not money damages. Consequently, the Tucker Act is not an alternative path available to assert Plaintiffs' claims. *Lee v. Thornton*, 420 U.S. 139, 140 (1975); *United States v. King*, 395 U.S. 1, 2-3 (1969). The flowage easements contain language that is ambiguous, and the development of a full record on this issue is necessary to resolve that ambiguity. Viewing the factual allegations in the complaint in a light most favorable to the nonmoving party, Plaintiffs have stated at this stage of the litigation a plausible claim. The Court denies the Federal Defendants' motion to dismiss Plaintiff's Fourth Cause of Action.

### Conclusion

Based on the foregoing, the Court **DENIES** the Federal Defendants' motions to dismiss. (Dkt. Nos. 37, 56).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

November 23, 2020
Charleston, South Carolina