# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

| | | |
|---|---|---|
| State of South Carolina, South Carolina Department of Health and Environmental Control; and Savannah River Maritime Commission, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| and | ) ) | C.A. No. 1:19-3132-RMG |
| Augusta, Georgia, | ) ) | |
| Plaintiff-Intervenor, | ) ) ) | |
| vs. | ) ) ) | |
| United States Army Corps of Engineers; United States Army Corps of Engineers, Savannah District; Ryan McCarthy, in his official capacity as Secretary of the Army; Lt. General Todd T. Semonite, in his official capacity Commanding General and Chief of Engineers, U.S. Army Corps of Engineers; Major General Diana M. Holland, in her official capacity as Commanding General, South Atlantic Division, U.S. Army Corps of Engineers; and Colonel Daniel H. Hibner, in his official capacity as District Engineer, U.S. Army Corps of Engineers, Savannah District, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER AND OPINION** |
| Federal Defendants, | ) ) ) | |
| and | ) ) | |
| Georgia Ports Authority, | ) ) ) | |
| Defendant-Intervenor. | ) ) ) | |
| _____ | ) | |

1

This matter comes before the Court for a merits determination of whether a plan adopted by the Defendant United States Army Corps of Engineers ("Army Corps") for the demolition of the Savannah Bluff Lock and Dam and replacement with another structure, titled Alternative 2-6d, violates the express language of Section 1319 of the Water Infrastructure Improvements for the Nation Act ("WIIN Act"), 2016 Public Law 114-322.[1]   Plaintiffs and Plaintiff-Intervenor argue that the plan is violative of the clear language of the WIIN Act, which they assert requires any plan removing the lock and dam must " be able to maintain the pool" that was "in existence on the date of the enactment of the Act." *Id*. at § 319(c)(1)(A)(ii)(I).  Plaintiffs and Plaintiff-Intervenors seek declaratory and injunctive relief.  Federal Defendants argue that the WIIN Act contains no fixed standard for maintenance of the pool, only that the pool remaining once the dam is removed and replaced with another structure be sufficient for water supply and recreational activities that existed at the time of enactment.  There is no dispute that on the date of the adoption of the WIIN Act, December 16, 2016, the pool was 114.76 feet NGVD29 and Alternative 2-6d does not achieve that standard.[2]

---

[1]  Plaintiffs' WIIN Act claim is asserted in its First Cause of Action.  (Dkt. No. 1 at 39-41).  Plaintiff-Intervenor's WIIN Act claim is asserted in its First Cause of Action.  (Dkt. No. 23 at 46-49).

[2]  NGVD29 ("National Geodetic Vertical Datum of 1929") is a very precise unit for measuring sea level utilized by the Army Corps. Practically speaking, this means the pool upriver from the Savannah Bluff Lock and Dam was 114.76 feet above mean sea level. The parties dispute the extent to which Alternative 2-6d fails to meet that standard, with the range of the dispute between 3 and 5 feet.  Plaintiffs also assert that the river depth is not constant, and that the river depth ranges in the area upriver from the dam between 5 and 15 feet. (Dkt No. 103 at 10-11).  Plaintiffs assert these shallower areas, many near the shore, explain the images of docks sitting in mudflats during the 2019 field study conducted by the Army Corps to test the impact of Alternative 2-6d on water level of the pool.  Federal Defendants did not provide a calculation of water depth at any particular location upriver, but argue that the Plaintiffs' estimates are not reliable and the field test results of docks sitting in mudflats were caused by unusual circumstances that were not representative of true conditions.  For purposes of this Order, the Court does not need to sort out which party's estimate is accurate since all parties agree that Alternative 2-6d does not meet the 114.76 standard on the date of the enactment of the WIIN Act by at least 3 feet.

The Savannah Bluff Lock and Dam were originally constructed in 1937 to promote commercial navigation on the Savannah River up to Augusta, Georgia.   The dam at the site created a pool of water that was of considerable benefit to water supply users and for recreational purposes upriver, including for the city of Augusta, Georgia, 13 miles upriver from the dam.  Although commercial navigation ceased at the site in the late 1970s and the Army Corps allowed the lock to fall into disuse and disrepair, Congress continued to authorize the project, which preserved the pool of upriver water.

The Federal Defendants developed a plan for the deepening of the Savannah Harbor, known as the Savannah Harbor Expansion Project ("SHEP"), a major federal project, which required an assessment of adverse environmental consequences.  The National Marine Fisheries Service provided a Biological Opinion regarding the SHEP in 2011, which required the Federal Defendants to take certain actions to mitigate the anticipated adverse environmental impact of the harbor project on species protected by the Endangered Species Act.  These mandated mitigation actions included the construction of a fish passage around the Savannah Bluff Lock and Dam, which is 180 miles upriver from the Savannah Harbor, to allow Shortnose and Atlantic Sturgeon to pass through to historical spawning grounds upriver.  The fish bypass was to be constructed prior to or in conjunction with the harbor dredging to minimize the adverse impacts of the project on the sturgeon habitat.

A lawsuit was commenced between by Plaintiffs in 2012 challenging various aspects of the SHEP.  The suit was resolved by a mediated settlement agreement in 2013.  The settlement agreement incorporated a fish bypass with the Savannah Bluff Lock and Dam remaining in place.  As part of the settlement agreement, South Carolina agreed to issue water quality and navigation permits based upon the plans presented by the Army Corps.  At the time that

Plaintiffs executed the settlement agreement and issued the state permits for the SHEP in 2013, there was no plan to remove the Savannah Bluff Lock and Dam.

Things changed in 2016 with the adoption of the WIIN Act, which deauthorized the Savannah Bluff Lock and Dam and authorized the Army Corps to either (1) "repair the lock wall" of the Savannah Bluff Lock and Dam to "maintain the pool for navigation, water supply, and recreation activities, as in existence on the date of enactment of the Act"; or (2) construct across the Savannah River "a structure that is able to maintain the pool for water supply and recreation activities, as in existence on the date of the enactment of the Act." *Id*. §§ 1319(b)(1)(A), (c)(1)(A)(i), (c)(1)(A)(ii)(I).   If the second option was selected, the Army Corps was directed, upon completion of the new structure across the Savannah River, to remove the lock and dam at Savannah Bluff.  *Id*. at §1319(c)(1)(A)(ii)(II).

The Army Corps subsequently announced a proposed plan that removed the existing dam at Savannah Bluff and replaced it with a fixed crest weir with a rock ramp that stretched across the entirety of the Savannah River.  A simulated drawdown test was conducted by the Army Corps on February 9, 2019 to determine the impact of the potential reduction in the water depth of the pool, which had to be halted on February 15, 2019 after instability was created on the riverbank and numerous docks were left in mud flats.  (Dkt. No. 90-2).

The Army Corps proposal for Savannah Bluff was widely criticized in the public comments phase of the review by the city of Augusta and local citizens in the area, which objected to the adverse impact of the project on the upriver pool on water supply, historic sites, habitat, and recreational activities.  Only 2% of the public comments supported the proposed project. (Dkt. No. 1-21 at 2).  The Army Corps' own Final Independent External Peer Review Report, issued on May 16, 2019, raised multiple serious concerns regarding the proposed project,

including the fact that Alternative 2-6d failed to maintain the pool in existence on the date of the enactment of the WIIN Act, as the statute required. (Dkt. No. 90-1 at 38, 39).

Federal Defendants announced the formal adoption of Alternative 2-6d for Savannah Bluff on October 29, 2019, making this a final agency decision. The Army Corps asserted that the WIIN Act did not mandate a specific water level for the pool be maintained, only that the functionality of the river for water supply and recreation continue. This lawsuit thereafter followed.

Prior to the hearing on the motion for preliminary injunction, which was held on November 19, 2020, the Court gave notice to the parties that it would conduct a trial on the merits regarding whether Army Corps Alternative 2-6d violates Section 319 of the WIIN Act. (Dkt. No. 101).[3] The Court now makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure on the Plaintiffs' and Plaintiff-Intervenor's WIIN Act claims.

## Findings of Fact

1.     The Army Corps formally adopted Alternative 2-6d on October 29, 2019, which provided for the demolition of the Savannah Bluff Lock and Dam and replaced it with a fixed crest weir with a rock ramp that stretched across the Savannah River.

2.     Alternative 2-6d does not maintain the pool that existed on December 16, 2016, 114.76 feet NGVD29.

## Conclusions of Law

---

[3] The Court, by separate order, has addressed the Federal Defendants' and Defendant-Intervenor's motions to dismiss. (Dkt. Nos. 37, 52). In light of the Court's decision on the merits of the WIIN Act claims and grant of permanent injunctive relief, as set forth below, the Court denies Plaintiffs' and Plaintiff-Intervenor's pending motions for preliminary injunctive relief (Dkt. Nos. 90, 91) as moot.

1.     A central issue in this action revolves around the requirements of Section 1319 of the WIIN Act.  The Act provides the Army Corps with two distinct options: (1) repair the lock wall at Savannah Bluff to allow safe passage of sturgeon so long as the project "maintain[s] the pool for navigation, water supply, and recreational activities, as is in existence on the date of the enactment of the Act"; or (2) construct a new structure at the location and remove the lock and dam, provided that the "structure is able to maintain the pool for water supply and recreation, as in existence on the date of enactment of the Act."  § 1319(c)(1).

2.     Federal Defendants read the statutory language to mean that the Army Corps' only obligation is that the new structure is "able to maintain the pool [sufficient] for water supply and recreational activities . . ." (Dkt. No. 103 at 32).  From this interpretation, Federal Defendants contend they meet the statutory obligation by maintaining the "functionality" of the pool of water upriver from the new structure, without any need to maintain the pool "in existence on the date of the enactment of the Act." (*Id*.)  The difficulty with this argument is that Federal Defendants have read into the statute the word "sufficient" that is not provided and a concept of functionality that is likewise missing. (*Id*.).  It is, of course, well settled that courts "must construe statutes as written and not add words of their own choosing."  *Ignacio v. United States*, 674 F.3d 252, 255 (4th Cir. 201).

3.     The WIIN Act unambiguously requires the agency to construct "a structure that is able to maintain the pool for water supply and recreational activities" at a very precise level—that level existing on the date of the adoption of the Act.  Congress plainly required any structure that would replace the Savannah Bluff Lock and Dam "maintain the pool" that existed "on the date of enactment," something that Alternative 2-6d does not do.

4.      In an effort to prevent the Court from reaching a decision in the merits, Federal Defendants have made a series of arguments regarding jurisdiction, sovereign immunity, and the Court's obligation to defer to the agency's interpretation of the statutory language.  The Court finds all of these arguments unpersuasive.

5.      Federal Defendants first argue that this action is barred by sovereign immunity, which is premised on the contention that Plaintiffs have no jurisdiction under the Administrative Procedures Act ("APA").  Federal Defendants first argue this matter is left to the discretion of the Army Corps, making review under the APA unavailable. (Dkt. No. 97 at 18-19).  The APA creates a "strong presumption" in favor of judicial review of agency actions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015).  Consequently, the exception under the APA under § 701(a)(2) for matters "committed to agency discretion by law" has been read very narrowly and applies only in "the rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

The relevant provisions of the WIIN Act hardly fit the part of a standardless grant of essentially unlimited discretion to the agency.  The statute clearly states that Congress has limited the agency's choices to two distinct options and each option must "maintain the pool" existing on the date of the Act's adoption.  While the selection between the two defined options is left to the agency's discretion, there is no discretion regarding the adoption of any project that fails to maintain the pool on the date of enactment.  Plaintiffs and Plaintiff-Intervenor appropriately challenge the Army Corps' final decision on the basis that its selected project fails to "maintain the pool" and, consequently, is in excess of the agency's statutory authority.

Jurisdiction is provided under the APA for judicial review of agency action "not in accordance with law."  5 U.S.C. § 706(2)(A).

Federal Defendants' argument regarding agency discretion, as well as the issue of deference to the agency's interpretation of statutory law, addressed below, turns on the issue of what the WIIN Act actually requires regarding the maintenance of the pool.  The Army Corps contends its only obligation is to maintain a level of functionality for water supply and recreational activities in existence at time of the WIIN Act's adoption.

There is, however, no suggestion under the statutory language that the Army Corps is free to make a standardless judgment about functionality.  To the contrary, Congress' statutory language clearly limited the agency discretion, requiring that any project at the site not alter the pool existing on the date of enactment.  The challenge of the Plaintiffs and Plaintiff-Intervenor here is not barred under the APA as a matter reserved to agency discretion.

6.     Federal Defendants next contend that this Court is obligated to defer to the agency's statutory interpretation of the WIIN Act. (*Id.* at 21).  This fundamentally misstates the law.  Where the intent of Congress is clear from the statutory language, "the court, as well as the agency, must give effect to the unambiguously expressed into of Congress."  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984).  This recognizes the basic principle that "the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."  *Id.* at 843, n. 9.  Only where a statute is ambiguous and Congress has left a gap which the agency is required to fill with policies must the courts defer to an agency in a matter of statutory interpretation.  *Id.* at 843.  Here, Congress has mandated the selection of one of two options so long as the level of the pool is maintained that existed on the date of enactment.  There is no

ambiguity as to the intent of Congress, and the agency's "functional analysis" interpretation of the statute is entitled to no deference.[4]

7.     Federal Defendants additionally argue that the APA is unavailable to Plaintiffs and Plaintiff-Intervenors because they allegedly have an adequate remedy at law under the Tucker Act.  28 U.S.C. § 1491(a)(1).  While Federal Defendants are correct that the APA is inapplicable if a party has an adequate remedy at law such as money damages, 5 U.S.C. § 704, the Plaintiffs and Plaintiff-Intervenors seek only equitable relief in the form of a declaratory judgment and injunctive relief.  It is well settled that Tucker Act claims are limited to money damages and equitable relief is not available.  *Lee v. Thornton*, 420 U.S. 139, 140 (1975); *United States v. King*, 395 U.S. 1, 2-3 (1969).   Moreover, many of the injuries asserted by the Plaintiffs and Plaintiff-Intervenor, such as loss of recreational enjoyment of the Savannah River upriver from the planned new structure and damage to local habitat, cannot be adequately remedied by a money judgment.

8.     The Court finds that Section 1319 of the WIIN Act requires that any option selected by the Army Corps for the removal of the Lock and Dam at Savannah Bluff must maintain the pool existing on the day of enactment.  There is no dispute that the Army Corps' plan Alternative 2-6d fails to do that.  Therefore, the Army Corps' plan is in excess of its statutory authority, entitling Plaintiffs and Plaintiff-Intervenor to a judgment as a matter of law on their WIIN Act claims.

---

[4]  Had Congress intended to allow a new structure be constructed across the Savannah River that merely provided sufficient water for water supply and recreational activities, it did not need to mandate that the "structure" be "able to maintain the pool" that existed on the "date of enactment." § 1319(c)(1)(A)(ii)(I).  The Army Corps' functionality interpretation renders superfluous the statutory language clearly designed to mandate the maintenance of the pool existing on the date of the WIIN Act's adoption.

**Remedy**

Federal Defendants are hereby **PERMANENTLY ENJOINED** from implementing

Alternative 2-6d and any other plan involving the removal of the Savannah Bluff Lock and Dam

if the proposal does not "maintain the pool" that was in existence on the date of the Act's

enactment, which was 114.76 feet NGVD29.  This injunction binds Federal Defendants, their

officers, agents, servants, employees and attorneys, and any persons acting in concert with

Federal Defendants.

**Conclusion**

Based on the foregoing, the Court enters judgment for Plaintiffs and Plaintiff-Intervenor

on their claims arising under the WIIN Act.  The Court further enters a permanent injunction

against Federal Defendants as set forth above.

**AND IT IS SO ORDERED.**


<u>s/ Richard Mark Gergel</u>
Richard Mark Gergel
United States District Judge


November 23, 2020
Charleston, South Carolina